(Slip Opinion) OCTOBER TERM, 2010 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## TAPIA *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 10–5400.   Argued April 18, 2011—Decided June 16, 2011

Petitioner Tapia was convicted of, *inter alia*, smuggling unauthorized aliens into the United States.  The District Court imposed a 51-month prison term, reasoning that Tapia should serve that long in order to qualify for and complete the Bureau of Prisons' Residential Drug Abuse Program (RDAP).  On appeal, Tapia argued that lengthening her prison term to make her eligible for RDAP violated 18 U. S. C. §3582(a), which instructs sentencing courts to "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation."  The Ninth Circuit disagreed.  Relying on Circuit precedent, it held that a sentencing court cannot impose a prison term to assist a defendant's rehabilitation, but once imprisonment is chosen, the court may consider the defendant's rehabilitation needs in setting the sentence's length.

*Held:* Section 3582(a) does not permit a sentencing court to impose or lengthen a prison term in order to foster a defendant's rehabilitation. Pp. 3–15.

  (a) For nearly a century, the Federal Government used an indeterminate sentencing system premised on faith in rehabilitation. *Mistretta* v. *United States*, 488 U. S. 361, 363.  Because that system produced "serious disparities in [the] sentences" imposed on similarly situated defendants, *id.,* at 365, and failed to "achieve rehabilitation," *id.,* at 366, Congress enacted the Sentencing Reform Act of 1984 (SRA), replacing the system with one in which Sentencing Guidelines would provide courts with "a range of determinate sentences," *id.,* at 368.  Under the SRA, a sentencing judge must impose at least imprisonment, probation, or a fine.  See §3551(b).  In determining the appropriate sentence, judges must consider retribution, deterrence, incapacitation, and rehabilitation, §3553(a)(2), but a particular pur-

pose may apply differently, or not at all, depending on the kind of sentence under consideration. As relevant here, a court ordering imprisonment must "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation." §3582(a). A similar provision instructs the Sentencing Commission, as the Sentencing Guidelines' author, to "insure that the guidelines reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant." 28 U. S. C. §994(k). Pp. 3–6.

(b) Consideration of Tapia's claim starts with §3582(a)'s clear text. Putting together the most natural definitions of "recognize"—"to acknowledge or treat as valid"—and not "appropriate"—not "suitable or fitting for a particular purpose"—§3582(a) tells courts to acknowledge that imprisonment is not suitable for the purpose of promoting rehabilitation. It also instructs courts to make that acknowledgment when "determining whether to impose a term of imprisonment, and . . . [when] determining the length of the term." *Amicus,* appointed to defend the judgment below, argues that the "recognizing" clause is merely a caution for judges not to put too much faith in the capacity of prisons to rehabilitate. But his alternative interpretation is unpersuasive, as Congress expressed itself clearly in §3582(a). *Amicus* also errs in echoing the Ninth Circuit's reasoning that §3582's term "imprisonment" relates to the decision whether to incarcerate, not the determination of the sentence's length. Because "imprisonment" most naturally means "the state of being confined" or "a period of confinement," it does not distinguish between the defendant's initial placement behind bars and his continued stay there.

Section 3582(a)'s context supports this textual conclusion. By restating §3582(a)'s message to the Sentencing Commission, Congress ensured that all sentencing officials would work in tandem to implement the statutory determination to "reject imprisonment as a means of promoting rehabilitation." *Mistretta*, 488 U. S., at 367. Equally illuminating is the absence of any provision authorizing courts to ensure that offenders participate in prison rehabilitation programs. When Congress wanted sentencing courts to take account of rehabilitative needs, it gave them authority to do so. See, *e.g.,* §3563(b)(9). In fact, although a sentencing court can recommend that an offender be placed in a particular facility or program, see §3582(a), the authority to make the placement rests with the Bureau of Prisons, see, *e.g.,* §3621(e). The point is well illustrated here, where the District Court's strong recommendations that Tapia participate in RDAP and be placed in a particular facility went unfulfilled. Finally, for those who consider legislative history useful, the key Senate Report on the SRA provides corroborating evidence. Pp. 6–12.

Syllabus

(c) *Amicus'* attempts to recast what the SRA says about rehabilitation are unavailing. Pp. 12–14.

(d) Here, the sentencing transcript suggests that Tapia's sentence may have been lengthened in light of her rehabilitative needs. A court does not err by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs. But the record indicates that the District Court may have increased the length of Tapia's sentence to ensure her completion of RDAP, something a court may not do. The Ninth Circuit is left to consider on remand the effect of Tapia's failure to object to the sentence when imposed. Pp. 14–15.

376 Fed. Appx. 707, reversed and remanded.

KAGAN, J., delivered the opinion for a unanimous Court. SOTOMAYOR, J., filed a concurring opinion, in which ALITO, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 10–5400

ALEJANDRA TAPIA, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[June 16, 2011]

JUSTICE KAGAN delivered the opinion of the Court.

We consider here whether the Sentencing Reform Act pre-cludes federal courts from imposing or lengthening a prison term in order to promote a criminal defendant's rehabilitation. We hold that it does.

I

Petitioner Alejandra Tapia was convicted of, *inter alia*, smuggling unauthorized aliens into the United States, in violation of 8 U. S. C. §§1324(a)(2)(B)(ii) and (iii). At sentencing, the District Court determined that the United States Sentencing Guidelines recommended a prison term of between 41 and 51 months for Tapia's offenses. The court decided to impose a 51-month term, followed by three years of supervised release. In explaining its reasons, the court referred several times to Tapia's need for drug treatment, citing in particular the Bureau of Prison's Residential Drug Abuse Program (known as RDAP or the 500 Hour Drug Program). The court indicated that Tapia should serve a prison term long enough to qualify for and complete that program:

> "The sentence has to be sufficient to provide needed
> correctional treatment, and here I think the needed

correctional treatment is the 500 Hour Drug Program.

.              .              .              .              .

> "Here I have to say that one of the factors that—I am
> going to impose a 51-month sentence, . . . and one of
> the factors that affects this is the need to provide
> treatment.  In other words, so she is in long enough to
> get the 500 Hour Drug Program, number one."  App.
> 27.

("Number two" was "to deter her from committing other
criminal offenses."  *Ibid.*)    The court "strongly recom-
mend[ed]" to the Bureau of Prisons (BOP) that Tapia
"participate in [RDAP] and that she serve her sentence at"
the Federal Correctional Institution in Dublin, California
(FCI Dublin), where "they have the appropriate tools . . .
to help her, to start to make a recovery."  *Id.,* at 29.  Tapia
did not object to the sentence at that time.  *Id.*, at 31.

On appeal, however, Tapia argued that the District
Court had erred in lengthening her prison term to make
her eligible for RDAP.  App. to Pet. for Cert. 2.  In Tapia's
view, this action violated 18 U. S. C. §3582(a), which
instructs sentencing courts to "recogniz[e] that imprison-
ment is not an appropriate means of promoting correction
and rehabilitation."  The United States Court of Appeals
for the Ninth Circuit disagreed, 376 Fed. Appx. 707 (2010),
relying on its prior decision in *United States* v. *Duran*, 37
F. 3d 557 (1994).  The Ninth Circuit had held there that
§3582(a) distinguishes between deciding to impose a term
of imprisonment and determining its length.  See *id.,* at
561.  According to *Duran*, a sentencing court cannot im-
pose a prison term to assist a defendant's rehabilitation.
But "[o]nce imprisonment is chosen as a punishment," the
court may consider the defendant's need for rehabilitation
in setting the length of the sentence.  *Ibid.*

We granted certiorari to consider whether §3582(a)

permits a sentencing court to impose or lengthen a prison term in order to foster a defendant's rehabilitation. 562 U. S. ___ (2010). That question has divided the Courts of Appeals.[1] Because the United States agrees with Tapia's interpretation of the statute, we appointed an *amicus curiae* to defend the judgment below.[2] We now reverse.

## II

We begin with statutory background—how the relevant sentencing provisions came about and what they say. Aficionados of our sentencing decisions will recognize much of the story line.

"For almost a century, the Federal Government employed in criminal cases a system of indeterminate sentencing." *Mistretta* v. *United States*, 488 U. S. 361, 363 (1989). Within "customarily wide" outer boundaries set by Congress, trial judges exercised "almost unfettered discretion" to select prison sentences for federal offenders. *Id.*, at 364. In the usual case, a judge also could reject prison time altogether, by imposing a "suspended" sentence. If the judge decided to impose a prison term, discretionary authority shifted to parole officials: Once the defendant had spent a third of his term behind bars, they could order his release. See K. Stith & J. Cabranes, Fear of Judging: Sentencing Guidelines in the Federal Courts 18–20 (1998).

This system was premised on a faith in rehabilitation.

───────────

[1] Three Circuits have held that §3582(a) allows a court to lengthen, although not to impose, a prison term based on the need for rehabilitation. See *United States* v. *Duran*, 37 F. 3d 557 (CA9 1994); *United States* v. *Hawk Wing*, 433 F. 3d 622 (CA8 2006); *United States* v. *Jimenez*, 605 F. 3d 415 (CA6 2010). Two Courts of Appeals have ruled that §3582(a) bars a court from either imposing or increasing a period of confinement for rehabilitative reasons. See *United States* v. *Manzella*, 475 F. 3d 152 (CA3 2007); *In re Sealed Case*, 573 F. 3d 844 (CADC 2009).

[2] We appointed Stephanos Bibas to brief and argue the case, 562 U. S. ___ (2011), and he has ably discharged his responsibilities.

Discretion allowed "the judge and the parole officer to [base] their respective sentencing and release decisions upon their own assessments of the offender's amenability to rehabilitation." *Mistretta*, 488 U. S., at 363. A convict, the theory went, should generally remain in prison only until he was able to reenter society safely. His release therefore often coincided with "the successful completion of certain vocational, educational, and counseling programs within the prisons." S. Rep. No. 98–225, p. 40 (1983) (hereinafter S. Rep.). At that point, parole officials could "determin[e] that [the] prisoner had become rehabilitated and should be released from confinement." Stith & Cabranes, *supra*, at 18.[3]

But this model of indeterminate sentencing eventually fell into disfavor. One concern was that it produced "[s]erious disparities in [the] sentences" imposed on similarly situated defendants. *Mistretta*, 488 U. S., at 365. Another was that the system's attempt to "achieve rehabilitation of offenders had failed." *Id.,* at 366. Lawmakers and others increasingly doubted that prison programs could "rehabilitate individuals on a routine basis"—or that parole officers could "determine accurately whether or when a particular prisoner ha[d] been rehabilitated." S. Rep., at 40.

———————

[3] The statutes governing punishment of drug-addicted offenders (like Tapia) provide an example of this system at work. If a court concluded that such an offender was "likely to be rehabilitated through treatment," it could order confinement "for treatment . . . for an indeterminate period of time" not to exceed the lesser of 10 years or the statutory maximum for the offender's crime. 18 U. S. C. §4253(a) (1982 ed.); see also §4251(c) ("'Treatment' includes confinement and treatment in an institution . . . and includes, but is not limited to, medical, educational, social, psychological, and vocational services, corrective and preventive guidance and training, and other rehabilitative services"). Once the offender had undergone treatment for six months, the Attorney General could recommend that the Board of Parole release him from custody, and the Board could then order release "in its discretion." §4254.

Congress accordingly enacted the Sentencing Reform Act of 1984, 98 Stat. 1987 (SRA or Act), to overhaul federal sentencing practices. The Act abandoned indeterminate sentencing and parole in favor of a system in which Sentencing Guidelines, promulgated by a new Sentencing Commission, would provide courts with "a range of determinate sentences for categories of offenses and defendants." *Mistretta*, 488 U. S., at 368. And the Act further channeled judges' discretion by establishing a framework to govern their consideration and imposition of sentences.

Under the SRA, a judge sentencing a federal offender must impose at least one of the following sanctions: imprisonment (often followed by supervised release), probation, or a fine. See §3551(b). In determining the appropriate sentence from among these options, §3553(a)(2) requires the judge to consider specified factors, including:

> "the need for the sentence imposed—
>> "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> "(B) to afford adequate deterrence to criminal conduct;
>> "(C) to protect the public from further crimes of the defendant; and
>> "(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

These four considerations—retribution, deterrence, incapacitation, and rehabilitation—are the four purposes of sentencing generally, and a court must fashion a sentence "to achieve the[se] purposes . . . to the extent that they are applicable" in a given case. §3551(a).

The SRA then provides additional guidance about how the considerations listed in §3553(a)(2) pertain to each of

the Act's main sentencing options—imprisonment, supervised release, probation, and fines. See §3582(a); §3583; §3562(a); §3572(a). These provisions make clear that a particular purpose may apply differently, or even not at all, depending on the kind of sentence under consideration. For example, a court may *not* take account of retribution (the first purpose listed in §3553(a)(2)) when imposing a term of supervised release. See §3583(c).

Section 3582(a), the provision at issue here, specifies the "factors to be considered" when a court orders imprisonment. That section provides:

> "The court, in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation."

A similar provision addresses the Sentencing Commission in its capacity as author of the Sentencing Guidelines. The SRA instructs the Commission to:

> "insure that the guidelines reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional treatment." 28 U. S. C. §994(k).

With this statutory background established, we turn to the matter of interpretation.

### III
### A

Our consideration of Tapia's claim starts with the text of 18 U. S. C. §3582(a)—and given the clarity of that provi-

sion's language, could end there as well. As just noted, that section instructs courts to "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation." A common—and in context the most natural—definition of the word "recognize" is "to acknowledge or treat as valid." Random House Dictionary of the English Language 1611 (2d ed. 1987). And a thing that is not "appropriate" is not "suitable or fitting for a particular purpose." *Id.*, at 103. Putting these two definitions together, §3582(a) tells courts that they should acknowledge that imprisonment is not suitable for the purpose of promoting rehabilitation. And when should courts acknowledge this? Section §3582(a) answers: when "determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, [when] determining the length of the term." So a court making these decisions should consider the specified rationales of punishment *except for* rehabilitation, which it should acknowledge as an unsuitable justification for a prison term.

As against this understanding, *amicus* argues that §3582(a)'s "recognizing" clause is not a flat prohibition but only a "reminder" or a "guide [for] sentencing judges' cognitive processes." Brief for Court-Appointed *Amicus Curiae* in Support of Judgment Below 23–24 (hereinafter *Amicus* Brief) (emphasis deleted). *Amicus* supports this view by offering a string of other definitions of the word "recognize": "'recall to mind,' 'realize,' or 'perceive clearly.'" *Id.*, at 24 (quoting dictionary definitions). Once these are plugged in, *amicus* suggests, §3582(a) reveals itself as a kind of loosey-goosey caution not to put *too* much faith in the capacity of prisons to rehabilitate.

But we do not see how these alternative meanings of "recognize" help *amicus*'s cause. A judge who "perceives clearly" that imprisonment is not an appropriate means of promoting rehabilitation would hardly incarcerate someone for that purpose. Ditto for a judge who "realizes" or

"recalls" that imprisonment is not a way to rehabilitate an offender. To be sure, the drafters of the "recognizing" clause could have used still more commanding language: Congress could have inserted a "thou shalt not" or equivalent phrase to convey that a sentencing judge may never, ever, under any circumstances consider rehabilitation in imposing a prison term. But when we interpret a statute, we cannot allow the perfect to be the enemy of the merely excellent. Congress expressed itself clearly in §3582(a), even if armchair legislators might come up with something even better. And what Congress said was that when sentencing an offender to prison, the court shall consider all the purposes of punishment except rehabilitation—because imprisonment is not an appropriate means of pursuing that goal.

*Amicus* also claims, echoing the Ninth Circuit's reasoning in *Duran*, that §3582(a)'s "recognizing" clause bars courts from considering rehabilitation only when imposing a prison term, and not when deciding on its length. The argument goes as follows. Section 3582(a) refers to two decisions: "The court, [1] in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, [2] in determining the length of the term" must consider the purposes of punishment listed in §3553(a)(2), subject to the caveat of the "recognizing" clause. But that clause says only that "imprisonment" is not an appropriate means of rehabilitation. Because the "primary meaning of 'imprisonment' is 'the act of confining a person,'" *amicus* argues, the clause relates only to [1] the decision to incarcerate, and not to [2] the separate determination of the sentence's length. *Amicus* Brief 52.

We again disagree. Under standard rules of grammar, §3582(a) says: A sentencing judge shall recognize that imprisonment is not appropriate to promote rehabilitation when the court considers the applicable factors of §3553(a)(2); and a court considers these factors when

determining *both* whether to imprison an offender *and* what length of term to give him. The use of the word "imprisonment" in the "recognizing" clause does not destroy—but instead fits neatly into—this construction. "Imprisonment" as used in the clause most naturally means "[t]he state of being confined" or "a period of confinement." Black's Law Dictionary 825 (9th ed. 2009); see also Webster's Third New International Dictionary 1137 (1993) (the "state of being imprisoned"). So the word does not distinguish between the defendant's initial placement behind bars and his continued stay there. As the D. C. Circuit noted in rejecting an identical argument, "[a] sentencing court deciding to keep a defendant locked up for an additional month is, as to that month, in fact choosing imprisonment over release." *In re Sealed Case*, 573 F. 3d 844, 850 (2009).[4] Accordingly, the word "imprisonment" does not change the function of the "recognizing" clause—to constrain a sentencing court's decision both to impose and to lengthen a prison term.[5]

The context of §3582(a) puts an exclamation point on this textual conclusion. As noted earlier, *supra*, at 6, another provision of the SRA restates §3582(a)'s message,

---

[4] Indeed, we can scarcely imagine a reason why Congress would have wanted to draw the distinction that *amicus* urges on us. That distinction would prevent a court from considering rehabilitative needs in imposing a 1-month sentence rather than probation, but not in choosing a 60-month sentence over a 1-month term. The only policy argument *amicus* can offer in favor of this result is that "[t]he effects of imprisonment plateau a short while after the incarceration" and "'[t]he difference in harm between longer and shorter prison terms is smaller than typically assumed.'" *Amicus* Brief 56. But nothing in the SRA indicates that Congress is so indifferent to the length of prison terms.

[5] The Government argues that "Congress did not intend to prohibit courts from imposing *less* imprisonment in order to promote a defendant's rehabilitation." Brief for United States 40 (emphasis added). This case does not require us to address that question, and nothing in our decision expresses any views on it.

but to a different audience.  That provision, 28 U. S. C. §994(k), directs the Sentencing Commission to ensure that the Guidelines "reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional treatment."  In this way, Congress ensured that all sentencing officials would work in tandem to implement the statutory determination to "rejec[t] imprisonment as a means of promoting rehabilitation."  *Mistretta*, 488 U. S., at 367 (citing 28 U. S. C. §994(k)).  Section 994(k) bars the Commission from recommending a "term of imprisonment"—a phrase that again refers both to the fact and to the length of incarceration—based on a defendant's rehabilitative needs.  And §3582(a) prohibits a court from considering those needs to impose or lengthen a period of confinement when selecting a sentence from within, or choosing to depart from, the Guidelines range.  Each actor at each stage in the sentencing process receives the same message: Do not think about prison as a way to rehabilitate an offender.

Equally illuminating here is a statutory silence—the absence of any provision granting courts the power to ensure that offenders participate in prison rehabilitation programs.  For when Congress wanted sentencing courts to take account of rehabilitative needs, it gave courts the authority to direct appropriate treatment for offenders.  Thus, the SRA instructs courts, in deciding whether to impose probation or supervised release, to consider whether an offender could benefit from training and treatment programs.  See 18 U. S. C. §3562(a); §3583(c).  And so the SRA *also* authorizes courts, when imposing those sentences, to order an offender's participation in certain programs and facilities.  §3563(b)(9); §3563(b)(11); §3563(a)(4); §3583(d).  As a condition of probation, for example, the court may require the offender to "undergo

available medical, psychiatric, or psychological treatment, including treatment for drug or alcohol dependency, as specified by the court, and [to] remain in a specified institution if required for that purpose." §3563(b)(9).

If Congress had similarly meant to allow courts to base prison terms on offenders' rehabilitative needs, it would have given courts the capacity to ensure that offenders participate in prison correctional programs. But in fact, courts do not have this authority. When a court sentences a federal offender, the BOP has plenary control, subject to statutory constraints, over "the place of the prisoner's imprisonment," §3621(b), and the treatment programs (if any) in which he may participate, §§3621(e), (f); §3624(f). See also 28 CFR pt. 544 (2010) (BOP regulations for administering inmate educational, recreational, and vocational programs); 28 CFR pt. 550, subpart F (drug abuse treatment programs). A sentencing court can *recommend* that the BOP place an offender in a particular facility or program. See §3582(a). But decisionmaking authority rests with the BOP.

This case well illustrates the point. As noted earlier, the District Court "strongly recommend[ed]" that Tapia participate in RDAP, App. 29, and serve her sentence at FCI Dublin, "where they have the facilities to really help her," *id.,* at 28. But the court's recommendations were only recommendations—and in the end they had no effect. See *Amicus* Brief 42 ("[Tapia] was not admitted to RDAP, nor even placed in the prison recommended by the district court"); Reply Brief for United States 8, n. 1 ("According to BOP records, [Tapia] was encouraged to enroll [in RDAP] during her psychology intake screening at [the federal prison], but she stated that she was not interested, and she has not volunteered for the program"). The sentencing court may have had plans for Tapia's rehabilitation, but it lacked the power to implement them. That incapacity speaks volumes. It indicates that Congress did not intend

that courts consider offenders' rehabilitative needs when imposing prison sentences.

Finally, for those who consider legislative history useful, the key Senate Report concerning the SRA provides one last piece of corroborating evidence. According to that Report, decades of experience with indeterminate sentencing, resulting in the release of many inmates after they completed correctional programs, had left Congress skeptical that "rehabilitation can be induced reliably in a prison setting." S. Rep., at 38. Although some critics argued that "rehabilitation should be eliminated completely as a purpose of sentencing," Congress declined to adopt that categorical position. *Id.*, at 76. Instead, the Report explains, Congress barred courts from considering rehabilitation in imposing prison terms, *ibid.*, and n. 165, but not in ordering other kinds of sentences, *ibid.*, and n. 164. "[T]he purpose of rehabilitation," the Report stated, "is still important in determining whether a sanction *other than a term of imprisonment* is appropriate in a particular case." See *id.,* at 76–77 (emphasis added).

And so this is a case in which text, context, and history point to the same bottom line: Section 3582(a) precludes sentencing courts from imposing or lengthening a prison term to promote an offender's rehabilitation.

B

With all these sources of statutory meaning stacked against him, *amicus* understandably tries to put the SRA's view of rehabilitation in a wholly different frame. *Amicus* begins by conceding that Congress, in enacting the SRA, rejected the old "[r]ehabilitation [m]odel." *Amicus* Brief 1. But according to *amicus*, that model had a very limited focus: It was the belief that "isolation and prison routine" could alone produce "penitence and spiritual renewal." *Id.,* at 1, 11. What the rehabilitation model did *not* include—and the SRA therefore did not reject—was prison

treatment programs (including for drug addiction) targeted to offenders' particular needs. See *id.*, at 21, 25, 27–28. So even after the passage of §3582(a), *amicus* argues, a court may impose or lengthen a prison sentence to promote an offender's participation in a targeted treatment program. The only thing the court may not do is to impose a prison term on the ground that confinement itself—its inherent solitude and routine—will lead to rehabilitation.

We think this reading of the SRA is too narrow. For one thing, the relevant history shows that at the time of the SRA's enactment, prison rehabilitation efforts focused on treatment, counseling, and training programs, not on seclusion and regimentation. See Rotman, The Failure of Reform: United States, 1865–1965, in Oxford History of the Prison: The Practice of Punishment in Western Society 169, 189–190 (N. Morris & D. Rothman eds. 1995) (describing the pre-SRA "therapeutic model of rehabilitation" as characterized by "individualized treatment" and "vocational training and group counseling programs"); see also n. 3, *supra* (noting pre-SRA statutes linking the confinement of drug addicts to the completion of treatment programs). Indeed, Congress had in mind precisely these programs when it prohibited consideration of rehabilitation in imposing a prison term. See 28 U. S. C. §994(k) (instructing the Sentencing Commission to prevent the use of imprisonment to "provid[e] the defendant with needed educational or vocational training . . . or other correctional treatment"); S. Rep., at 40 (rejecting the "model of 'coercive' rehabilitation—the theory of correction that ties prison release dates to the successful completion of certain vocational, educational, and counseling programs within the prisons"). Far from falling outside the "rehabilitation model," these programs practically defined it.

It is hardly surprising, then, that *amicus*'s argument finds little support in the statutory text. Read most natu-

rally, 18 U. S. C. §3582(a)'s prohibition on "promoting correction and rehabilitation" covers efforts to place offenders in rehabilitation programs.  Indeed, §3582(a)'s language recalls the SRA's description of the rehabilitative purpose of sentencing—"provid[ing] the defendant with needed educational or vocational training, medical care, or other correctional treatment."  §3553(a)(2)(D).  That description makes clear that, under the SRA, treatment, training, and like programs are rehabilitation's sum and substance.  So *amicus*'s efforts to exclude rehabilitation programs from the "recognizing" clause's reach do not succeed.  That section prevents a sentencing court from imposing or lengthening a prison term because the court thinks an offender will benefit from a prison treatment program.

IV

In this case, the sentencing transcript suggests the possibility that Tapia's sentence was based on her rehabilitative needs.

We note first what we do *not* disapprove about Tapia's sentencing.  A court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs.  To the contrary, a court properly may address a person who is about to begin a prison term about these important matters.  And as noted earlier, a court may urge the BOP to place an offender in a prison treatment program.  See *supra*, at 11.  Section 3582(a) itself provides, just after the clause at issue here, that a court may "make a recommendation concerning the type of prison facility appropriate for the defendant"; and in this calculus, the presence of a rehabilitation program may make one facility more appropriate than another.  So the sentencing court here did nothing wrong—and probably something very right—in trying to get Tapia into an effective drug treatment

program.

But the record indicates that the court may have done more—that it may have selected the length of the sentence to ensure that Tapia could complete the 500 Hour Drug Program. "The sentence has to be sufficient," the court explained, "to provide needed correctional treatment, and here I think the needed correctional treatment is the 500 Hour Drug Program." App. 27; see *supra*, at 1–2. Or again: The "number one" thing "is the need to provide treatment. In other words, so she is in long enough to get the 500 Hour Drug Program." App. 27; see *supra*, at 2. These statements suggest that the court may have calculated the length of Tapia's sentence to ensure that she receive certain rehabilitative services. And that a sentencing court may not do. As we have held, a court may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation.

For the reasons stated, we reverse the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion. Consistent with our practice, see, *e.g., United States* v. *Marcus*, 560 U. S. \_\_\_, \_\_\_ (2010) (slip op., at 8), we leave it to the Court of Appeals to consider the effect of Tapia's failure to object to the sentence when imposed. See Fed. Rule Crim. Proc. 52(b); *United States* v. *Olano*, 507 U. S. 725, 731 (1993).

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

No. 10–5400

ALEJANDRA TAPIA, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[June 16, 2011]

JUSTICE SOTOMAYOR, with whom JUSTICE ALITO joins,
concurring.

I agree with the Court's conclusion that 18 U. S. C.
§3582(a) "precludes federal courts from imposing or length-
ening a prison term in order to promote a criminal de-
fendant's rehabilitation." *Ante*, at 1. I write separately
to note my skepticism that the District Judge violated this
proscription in this case.

At the sentencing hearing, the District Judge carefully
reviewed the sentencing factors set forth in §3553(a).
First, he considered "[t]he nature and circumstances of the
offense" committed by petitioner Alejandra Tapia—in this
case, alien smuggling. App. 25–26; see §3553(a)(1). He
emphasized that Tapia's criminal conduct "created a sub-
stantial risk of death or serious bodily injury" to the
smuggled aliens. App. 26; see also *id.*, at 20 (noting that
the aliens were secreted in the vehicle's gas tank com-
partment). Second, he reviewed Tapia's "history and
characteristics," §3553(a)(1), including her history of being
abused and her associations "with the wrong people," *id.*,
at 26. He noted his particular concern about Tapia's
criminal conduct while released on bail, when she failed to
appear and was found in an apartment with meth-
amphetamine, a sawed-off shotgun, and stolen mail.
*Id.*, at 25–26. Third, he noted that the offense was
"serious," warranting a "sufficient" sentence. *Id.*, at 26; see

§3553(a)(2)(A). Fourth, he considered the need "to deter criminal conduct" and "to protect the public from further crimes of the defendant," which he characterized as a "big factor here, given [Tapia's] failure to appear and what she did out on bail." App. 26; see §§3553(a)(2)(B), (C). Fifth, he took account of the need "to provide needed correctional treatment," in this case, the Bureau of Prisons' (BOP) "500 Hour Drug Program," more officially called the Residential Drug Abuse Treatment Program (RDAP). App. 27; see §3553(a)(2)(D). And, finally, he noted the need "to avoid unwarranted sentencing disparities" and the need for the sentence "to be sufficient to effect the purposes of 3553(a) but not greater." App. 27; see §§3553(a), (a)(6).

Tapia faced a mandatory minimum sentence of 36 months' incarceration, App. 18, but her Guidelines range was 41 to 51 months, *id.*, at 13. After reviewing the §3553(a) factors, the judge imposed a sentence of 51 months, the top of the Guidelines range. He offered two reasons for choosing this sentence: "number one," the need for drug treatment; and "[n]umber two," deterrence. *Id.*, at 27. With respect to the latter reason, the judge high- lighted Tapia's criminal history and her criminal conduct while released on bail—which, he said, was "something that motivates imposing a sentence that in total is at the high end of the guideline range." *Id.*, at 27–28. He con- cluded, "I think that a sentence less than what I am im- posing would not deter her and provide for sufficient time so she could begin to address these problems." *Id.*, at 28.

The District Judge's comments at sentencing suggest that he believed the need to deter Tapia from engaging in further criminal conduct warranted a sentence of 51 months' incarceration. Granted, the judge also mentioned the need to provide drug treatment through the RDAP. The 51-month sentence he selected, however, appears to have had no connection to eligibility for the RDAP. See BOP Program Statement No. P5330.11, §2.5.1(b) (Mar. 16,

2009) (providing that, to participate in the RDAP, an inmate must ordinarily have at least 24 months remaining on her sentence). Even the 36-month mandatory minimum would have qualified Tapia for participation in the RDAP. I thus find it questionable that the judge lengthened her term of imprisonment beyond that necessary for deterrence in the belief that a 51-month sentence was necessary for rehabilitation. Cf. S. Rep. No. 98–225, p. 176 (1983) ("A term imposed for another purpose of sentencing may . . . have a rehabilitative focus if rehabilitation in such a case is an appropriate secondary purpose of the sentence").

Although I am skeptical that the thoughtful District Judge imposed or lengthened Tapia's sentence to promote rehabilitation, I acknowledge that his comments at sentencing were not perfectly clear. Given that Ninth Circuit precedent incorrectly permitted sentencing courts to consider rehabilitation in setting the length of a sentence, see *ante*, at 2, and that the judge stated that the sentence needed to be "long enough to get the 500 Hour Drug Program," App. 27, I cannot be certain that he did not lengthen Tapia's sentence to promote rehabilitation in violation of §3582(a). I therefore agree with the Court's disposition of this case and join the Court's opinion in full.