# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1225

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| Melvin Blackmon, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 23, 2011
Filed: December 1, 2011

_____

Before LOKEN, BEAM, and MURPHY, Circuit Judges.

_____

BEAM, Circuit Judge.

Melvin Blackmon conditionally pled guilty to one count of bank robbery, in violation of 18 U.S.C. § 2113(a), reserving his right to appeal the district court's[1] denial of his motion to suppress. The district court sentenced Blackmon within the Guidelines to 63 months' imprisonment. Blackmon appeals the denial of his motion to suppress and contends that his sentence is procedurally flawed. We affirm.

_____

[1]The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

## I.     BACKGROUND

On the afternoon of October 27, 2009, police officers were dispatched to a Kansas City, Missouri, apartment complex regarding a reported disturbance. The dispatcher informed the officers that one "Maurice Blackmon" was in violation of a protection order and was possibly under the influence of phencyclidine (PCP). The dispatcher also explained that Blackmon was served with the protection order the previous week.

At the apartment complex, bystanders informed the officers that they observed a black male dressed in all black who was acting erratically and appeared to be high on a controlled substance. As one of the officers scanned the area, he observed a man, later identified as defendant Melvin Blackmon, matching this description. Officers attempted to make verbal contact with Blackmon by calling out "Maurice," the name given by the dispatcher. Blackmon turned toward the officers but stared off in the distance in a confused manner. Based on the officers' experience, Blackmon's conduct was consistent with PCP usage. Despite approximately twenty commands from officers to get on the ground, Blackmon failed to do so and remained unresponsive. Blackmon started to reach into his pockets and officers became concerned that he was grabbing for a weapon. Then, Blackmon raised his fists as if he was ready to fight. An officer deployed his Taser, shocking Blackmon three times without effect. After the third shock, Blackmon turned his back to the officers and they tackled and handcuffed him. Blackmon remained silent throughout the entire ordeal.

Officers observed More-brand cigarettes on the ground where Blackmon was tackled. On Blackmon's person, officers discovered a cough syrup bottle containing a brown liquid, additional cigarettes (one was wet), and $1,729.13 in currency. Based on the officers' experience, More-brand cigarettes are often dipped in PCP and smoked, and PCP is commonly packaged in cough syrup bottles.

Officers then contacted the individual responsible for reporting the disturbance. That person directed officers to the protection order papers, which appeared to be in order. The protection order was for both Sherry Pulluaim and her son. Officers learned that Blackmon had entered and exited Pulluaim's apartment while her son was present. Blackmon was placed under arrest for violating the protection order, resisting arrest, and possessing PCP. At the police headquarters, a detention unit supervisor noticed that Blackmon resembled a party involved in a bank robbery earlier that day. After reviewing a surveillance photo of the robber, the officers concluded that Blackmon was, in fact, the robber.

The grand jury returned a one-count indictment charging Blackmon with bank robbery. Blackmon filed a motion to suppress evidence officers obtained incident to his arrest, asserting that his stop and arrest were not supported by reasonable suspicion or probable cause, respectively. After an evidentiary hearing, the magistrate judge[2] issued a report recommending denial of the motion, which the district court adopted. Blackmon subsequently pled guilty, reserving the right to appeal the denial of his motion to suppress. The presentence investigation report (PSR) calculated Blackmon's advisory Guidelines range at 63 to 78 months' imprisonment, based on an offense level of 19 and a criminal history category of VI. Blackmon did not object to the PSR's Guidelines calculation but requested a below-Guidelines sentence of 36 to 48 months' imprisonment. The district court rejected Blackmon's request for a downward variance and sentenced him to 63 months' imprisonment. Blackmon appeals.

---

[2]The Honorable Sarah W. Hays, United States Magistrate Judge for the Western District of Missouri.

## II. DISCUSSION

### A. Motion to Suppress

When reviewing the denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions de novo. United States v. Muhlenbruch, 634 F.3d 987, 995 (8th Cir.), cert. denied, 2011 WL 4532623 (Oct. 3, 2011).

Blackmon asserts that officers did not have reasonable suspicion to stop him under Terry v. Ohio, 392 U.S. 1 (1968). Under Terry, "police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause." United States v. Sokolow, 490 U.S. 1, 7 (1989) (internal quotation omitted). "An officer's suspicion is reasonable if he knows particularized, objective facts that lead to a rational inference that a crime is being or has been committed." United States v. Gannon, 531 F.3d 657, 661 (8th Cir. 2008) (internal quotation omitted). Here, the officers were told by a dispatcher that "Maurice Blackmon" had violated a protection order and was believed to be under the influence of PCP. When officers arrived at the scene, bystanders explained that a black male dressed in all black was acting erratically and appeared to be high. The officers soon located Blackmon, who matched the bystanders' description, and, based on their experience, the officers concluded that Blackmon's confused and unresponsive state was consistent with PCP usage. Under these facts, we hold that the officers had reasonable suspicion that criminal activity may be afoot.

Next, Blackmon contends that the officers did not have probable cause to support his arrest. We disagree. "In determining whether probable cause exists to make a warrantless arrest, the court looks to the totality of the circumstances to see whether a prudent person would believe the individual had committed or was

committing a crime." United States v. Segars, 31 F.3d 655, 659 (8th Cir. 1994). Importantly, "a defendant's response to even an invalid arrest or Terry stop may constitute independent grounds for arrest." United States v. Dawdy, 46 F.3d 1427, 1431 (8th Cir. 1995). Here, the officers attempted to make verbal contact with Blackmon and, despite some twenty commands to get on the ground, Blackmon remained unresponsive.[3] Then, Blackmon raised his fists as if he was ready to fight. At that point, a reasonable officer would have had probable cause to arrest Blackmon for resisting arrest under Missouri law. See Mo. Ann. Stat. § 575.150.1(1) (A person commits the crime of resisting arrest if the person reasonably should know an officer is making an arrest or a lawful stop or detention, and the person "[r]esists the arrest, stop or detention . . . by using or threatening the use of violence or physical force."); United States v. Collins, 200 F.3d 1196, 1198 (8th Cir. 2000); Dawdy, 46 F.3d at 1431.

During a subsequent search of Blackmon's person, officers found what they believed to be PCP, More-brand cigarettes, currency, and other evidence. Because probable cause supported Blackmon's arrest, this search did not violate the Fourth Amendment. United States v. Robinson, 414 U.S. 218, 235 (1973). Therefore, we affirm the district court's denial of Blackmon's motion to suppress.

### B.    Sentence

Blackmon contends that his 63-month sentence is procedurally flawed because (1) the district court lengthened his sentence to promote rehabilitation; and (2) the

---

[3]While conducting a Terry stop, "a police officer may take steps reasonably necessary to protect his or her personal safety and the safety of others and to maintain the status quo of a situation while verifying or dispelling suspicion in a short period of time." United States v. Seelye, 815 F.2d 48, 50 (8th Cir. 1987). Based on the officers' experience, individuals under the influence of PCP can go from being confused to having super-human strength in a matter of seconds.

court failed to address the 18 U.S.C. § 3553(a) sentencing factors. Because Blackmon failed to object on either ground at sentencing, we review these issues for plain error. See United States v. Woods, 642 F.3d 640, 645-46 (8th Cir. 2011); United States v. Phelps, 536 F.3d 862, 867 (8th Cir. 2008). "Under plain error review, the defendant must show: (1) an error; (2) that is plain; and (3) that affects substantial rights." United States v. Bain, 586 F.3d 634, 640 (8th Cir. 2009) (per curiam) (quotation omitted).

### 1.      Rehabilitation

After the parties submitted their appellate briefs, the Supreme Court overruled our circuit precedent, United States v. Hawk Wing, 433 F.3d 622 (8th Cir. 2006), and held that, under 18 U.S.C. § 3582(a),[4] district courts may not "impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation." Tapia v. United States, 131 S. Ct. 2382, 2393 (2011). District courts may, however, make recommendations to the Bureau of Prisons (BOP) regarding treatment programs and can discuss the benefits of such programs with defendants at sentencing. Id. at 2392. Therefore, the district court committed error that was plain in this case *if*, as Blackmon suggests, the district court lengthened his sentence to promote rehabilitation. See United States v. Pirani, 406 F.3d 543, 549 (8th Cir. 2005) (en banc) ("The plain error principle applies even when . . . the error results from a change in the law that occurred while the case was pending on appeal.").

As discussed above, Blackmon's Guidelines range was 63 to 78 months' imprisonment. Blackmon's attorney requested the district court to vary downward to

---

[4]18 U.S.C. § 3582(a) provides that, "in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term," district courts shall recognize "that imprisonment is not an appropriate means of promoting correction and rehabilitation."

a sentence between 36 to 48 months, emphasizing that much of Blackmon's lengthy criminal history is attributable to drug use. Blackmon's attorney asserted that a sentence of 36 to 48 months would permit Blackmon just enough time to complete the BOP's 500-hour drug treatment program. While Blackmon's attorney was making this argument, the district court briefly interrupted to point out that Blackmon could not possibly complete the drug program if he received a 36-month sentence.[5] Blackmon's counsel then clarified that a 48-month sentence would permit Blackmon to complete the program. Later, the district court emphasized that Blackmon, age 34, has continuously committed crimes since he was 17 despite having served an 8-year state prison sentence. Immediately after emphasizing Blackmon's criminal history and failure to be deterred by previous incarceration, the district court imposed a within-Guidelines 63-month sentence and recommended that Blackmon enter the BOP's drug treatment program.

On this record, we perceive no error that was plain. While it is error under Tapia for a district court to lengthen a prison sentence to promote rehabilitation, we are not convinced that the district court did so here. Indeed, the district court never expressed an intention to lengthen Blackmon's sentence for rehabilitative purposes. Rather, it was Blackmon who requested a downward variance based on his rehabilitative needs and the district court merely pointed out a mathematical flaw in his request. And, the fact that the district court discussed the BOP's drug program with Blackmon is not dispositive. Under Tapia, a district court "may urge the BOP to place an offender in a prison treatment program" and "[a] court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs." 131 S. Ct. at 2392.

_____

[5]According to Blackmon's attorney at sentencing, inmates must be in custody for at least 30 months in order to complete the BOP's drug treatment program. Here, the district court made it clear that Blackmon would receive 14-months credit for time served. Therefore, if Blackmon received a 36-month sentence, he would only be in custody for 22 months and could not possibly complete the BOP's program.

Similarly, Blackmon cannot demonstrate that the district court committed an error that affected his substantial rights–i.e., that "there is a reasonable probability [he] would have received a lighter sentence but for the error." Bain, 586 F.3d at 640. "[W]here the effect of the error on the result in the district court is uncertain or indeterminate–where we would have to speculate–the appellant has not met his burden of showing a reasonable probability that the result would have been different but for the error." Pirani, 406 F.3d at 553 (quotation omitted). Here, even assuming the district court considered Blackmon's rehabilitative needs to determine the length of his sentence, it is uncertain whether Blackmon would have received a lighter sentence if the district court had not done so. Indeed, the district court did not challenge Blackmon's assertion that a 48-month sentence would permit him to complete the BOP's drug program and there is no indication that the district court believed a 63-month sentence was necessary to achieve this purpose. Rather, it appears that Blackmon's within-Guidelines 63-month sentence was based on Blackmon's significant criminal history and the need to promote deterrence.

### 2.     Consideration of 18 U.S.C. § 3553(a) Factors

Blackmon also contends that the district court failed to address the § 3553(a) sentencing factors. We disagree. While the district court did not expressly cite § 3553(a), the court highlighted Blackmon's lengthy criminal history, see 18 U.S.C. § 3553(a)(1), and emphasized Blackmon's failure to "quit violating the law" despite serving a previous 8-year prison sentence, see id. § 3553(a)(2)(B), (C). "We do not require district courts to mechanically recite the § 3553(a) factors," United States v. Brown, 627 F.3d 1068, 1073 (8th Cir. 2010) (quotation omitted), cert. denied, 2011 WL 4535197 (Oct. 3, 2011), and district courts are not required to make "robotic incantations that each statutory factor has been considered." United States v. Lamoreaux, 422 F.3d 750, 756 (8th Cir. 2005) (internal quotation omitted). We are

satisfied on this record that the district court properly considered the § 3553(a) factors and adequately explained Blackmon's sentence.[6]

## III.   CONCLUSION

We affirm.

_____

[6]To the extent Blackmon asserts that his sentence is substantively unreasonable, he has failed to overcome the presumption of reasonableness we afford his within-Guidelines sentence.  See Woods, 642 F.3d at 645 n.3.