# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2382

_____

United States of America

*Plaintiff - Appellee*

v.

Christopher Wayne Holdsworth

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: April 14, 2016
Filed: July 28, 2016

_____

Before LOKEN, BEAM, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Christopher Wayne Holdsworth appeals his revocation sentence of 51 months' imprisonment, arguing that the district court[1] procedurally erred by (1) designating him as an offender with a criminal history category of VI instead of V in calculating

_____

[1]The Honorable Stephanie M. Rose, United States District Judge for the Southern District of Iowa.

his Guidelines range, and (2) lengthening his sentence to provide rehabilitation opportunities, in violation of *Tapia v. United States*, 564 U.S. 319 (2011). He also argues that his sentence is substantively unreasonable. We affirm.

## I. *Background*

Holdsworth pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). At the time of sentencing, Holdsworth had 18 criminal convictions, including convictions for theft, drunk driving, spitting in a police vehicle, assault, and assault on peace officers. Several of these convictions were felonies. At sentencing, Holdsworth's advisory Guidelines range was 41 to 51 months' imprisonment, but he urged the district court to impose a sentence of probation. He claimed that he had addressed his substance-abuse problems and "want[ed] to turn his life around." On July 2, 2010, the district court granted the requested downward variance and sentenced Holdsworth to five years of probation.

In May 2011, Holdsworth was discharged from a substance abuse and mental health program. But, three months later, he obtained psychiatric medications from someone else and ingested them. He overdosed and required hospitalization. Two days later, Holdsworth left the hospital against medical advice and was subsequently found incoherent at his residence. He was placed back in the hospital under a 48-hour psychiatric hold. As a consequence, the district court modified Holdsworth's probation to require his placement in a 60-day inpatient treatment program.

Holdsworth complied with the treatment program until approximately January 2012. At that time, he began using methamphetamine, drinking alcohol, and abusing prescription drugs. In May 2012, he began missing treatment sessions. In June 2012, he was fired from his job and stopped contacting the probation office. When the probation office finally located him, he admitted to flushing his urine to avoid discovery of his drug use. As a result, the district court again modified Holdsworth's probation, requiring him to enter a halfway house for 180 days.

Holdsworth was successfully discharged from the halfway house on January 11, 2013. After leaving the halfway house, Holdsworth stopped going to treatment, quit his job, and returned to using methamphetamine. On June 11, 2013, the district court modified his probation for a third time, again requiring him to return to the halfway house for 180 days. As soon as he was released in December 2013, he resumed violating the terms of his probation. He quit his job, failed to report to the probation office, skipped treatment, and used alcohol and methamphetamine. As a result, on January 17, 2014, the district court modified his probation for a fourth time, requiring his placement on home detention for 180 days.

In May 2014, Holdsworth used methamphetamine and skipped two urine tests. The district court took no action at that time. In June 2014, Holdsworth stopped taking his psychotropic medication, in violation of his probation conditions. By July 2014, he had lost his job and returned to consuming alcohol regularly, to the point of intoxication, and using methamphetamine, while skipping drug tests. As a consequence, on July 23, 2014, the district court modified Holdsworth's probation for a fifth time, requiring his placement in an in-patient substance-abuse treatment facility, followed by 120 days in a halfway house and 120 days of home confinement with alcohol monitoring.

Beginning in April 2015, Holdsworth returned to using alcohol, methamphetamine, and cocaine. He stopped going to treatment. His parents evicted him from their home, and he failed to move into a sober-living facility as the probation office had directed him. He also failed to notify the probation office of his new residence and ignored his probation officer's directive to return to school or work. In June 2015, the probation office moved to revoke Holdsworth's probation based on six violations: drug use, alcohol use, failure to comply with treatment, changing residences without notification, failure to maintain contact with the probation office, and failure to obtain employment or attend school.

At the revocation hearing, Holdsworth admitted the six violations. The probation officer who had supervised Holdsworth for the previous five years testified that "these violations are representative of a repeated pattern that has consistently occurred over the term or over the course of supervision." The officer explained that Holdsworth had "declined" "because of his sense of entitlement" and because "he struggles . . . to truly accept responsibility for his behavior . . . rather than blaming others for his hardships." According to the probation officer, Holdsworth "has consistently neglected to follow through in the long term with complying and continuing" with treatment. The probation officer opined that "if Mr. Holdsworth is allowed to continue doing what he was doing, it's very likely that he is going to either harm himself or someone else." When the district court inquired whether the probation officer believed that any other options existed for Holdsworth other than jail, the probation officer responded, "At this point, I think we need to start over."

The district court revoked Holdsworth's supervised release. In doing so, the court explained that the revocation "essentially return[ed] [Holdsworth] to an original sentencing stance." The court determined that, at Holdsworth's original sentencing, he had a total offense level of 15 and criminal history category of VI, resulting in an advisory Guidelines range of 41 to 51 months' imprisonment. The government noted that Holdsworth's advisory Guidelines range for revocation of supervised release was 8 to 14 months' imprisonment; however, it recommended a higher revocation sentencing range.

In determining Holdsworth's revocation sentence, the court engaged in three steps: (1) it found that the statutory penalties permitted imprisonment of up to ten years; (2) it calculated a revocation advisory Guidelines range of 8 to 14 months and an original advisory Guidelines range of 41 to 51 months' imprisonment; and (3) it considered the § 3553(a) factors. In reviewing the § 3553(a) factors, the court recognized the leniency of Holdsworth's original sentence of probation, which it characterized as an "unusual sentence to receive, particularly in a gun case." The

-4-

court found that probation had exhausted all of its options with Holdsworth and that he was "not getting better"; instead, he was "getting worse." The court considered Holdsworth's "history . . . very, very troubling" and noted that Holdsworth was "very dangerous to [himself] and to others" when he is "not sober and medicated."

The court discussed the circumstances of Holdsworth's underlying conviction in which Holdsworth, while "high on six or seven Vicodin pills and" after consuming "two quarts of beer," used a gun and threatened to shoot and kill his girlfriend. The court also reviewed Holdsworth's criminal history, noting that Holdsworth was an offender with "a criminal history category of VI, which means [he] ha[s] a very long criminal record." The court pointed out that before Holdsworth ever came to federal court, he had repeatedly violated terms of state probation, committed new crimes while on release from prior convictions, and refused to attend treatment.

Holdsworth's counsel had previously "suggest[ed] to the [c]ourt that *treatment is the response*" that Holdsworth needed and argued that "[p]rison won't do anything but warehouse him." (Emphasis added.) Holdsworth's counsel asserted that "if we're going to spend the money to go to prison, *let's spend the money on treatment*. Let's give him a chance. Let's give him a chance to get *back into treatment*." (Emphases added.) The court rejected this argument, stating:

> [T]his is not the kind of behavior that we as a society can continue to just stand by and watch and hope gets better. We've done what we can do for you and we have to be done trying at this point. It's going to be up to you.
>
> What I can't see anywhere in your history is that you've spent much time in prison, and by that I mean enough time to really cement your sobriety to where you get a couple, two, three, four good years of sobriety and medication and stability, and maybe that's what you need. I think that's the best we can hope for at this point for your safety and the safety of the community.

Having reviewed the § 3553(a) factors, the district court imposed a revocation sentence of 51 months' imprisonment.

## II. *Discussion*

On appeal, Holdsworth argues that the district court procedurally erred by (1) designating him as an offender with a criminal history category of VI instead of V in calculating his Guidelines range, and (2) committing *Tapia* error by lengthening his sentence to provide rehabilitation opportunities. He also argues that his sentence is substantively unreasonable.

### A. *Procedural Error*

Holdsworth concedes that plain-error review applies because he "fail[ed] to timely object to a[ny] procedural sentencing error." *See United States v. Smith*, 795 F.3d 868, 871 (8th Cir. 2015) (quotation and citation omitted). Therefore, Holdsworth "must show: (1) an error; (2) that is plain; and (3) that affects substantial rights." *Id*. (quotation and citation omitted).

#### 1. *Criminal History Category*

Holdsworth concedes that 41 to 51 months' imprisonment was his Guidelines range at the time of his original sentencing on July 2, 2010. Nevertheless, he argues that neither the court nor the parties recognized that in the intervening period between his original sentencing and the revocation hearing, the Guidelines were amended. As a consequence, had he been sentenced in 2015, his criminal history category would have been V rather than VI, resulting in a lower advisory Guidelines range. For that reason, Holdsworth argues that the district court plainly erred in using the wrong criminal history category when imposing his revocation sentence. He argues that a district court must use the Guidelines in effect on the date of sentencing under U.S.S.G. § 1B1.11. He points out that 18 U.S.C. § 3565(a)(2) provides that the court must "resentence the defendant under Subchapter A." He also notes that, under the

relevant portion of Subchapter A, the court must consider the Guidelines in effect on the date that the defendant is sentenced. *See* 18 U.S.C. § 3553(a)(4)(A)(ii). Holdsworth asserts that the miscalculation of his Guidelines range is prejudicial because it resulted in a higher sentencing range and persuaded the court that he deserved more punishment.

Holdsworth's argument is contrary to this court's precedent. *See United States v. Iversen*, 90 F.3d 1340, 1345 (8th Cir. 1996). In that case,

> in addressing the maximum sentence available for violation of probation by a non-juvenile defendant, we stated that under § 3565(a)(2) the district court was required to "resentence the defendant under subchapter A," which in general requires the court to sentence defendants in accordance with the Sentencing Guidelines. [*Iversen*, 90 F.3d] at 1345. We further noted that the amendment to this section in 1994 did "not alter the district court's power to sentence a probation violator *within the range of sentences available at the time of the initial sentence*." *Id*. at n.6.

*United States v. K.R.A.*, 337 F.3d 970, 976–77 (8th Cir. 2003) (emphasis added); *see also United States v. Tschebaum*, 306 F.3d 540, 543 (8th Cir. 2002) ("In *United States v. Iversen*, 90 F.3d 1340, 1345 & n.6 (8th Cir. 1996), we held that a district court has the power 'to sentence a probation violator within the range of sentences available at the time of the initial sentence.'").

In amending § 3565(a) in 1994, Congress's intention was to "broaden a sentencing court's power by allowing it simply to resentence probation violators under that subchapter [A]." *Tschebaum*, 306 F.3d at 544 (citing *United States v. Schaefer*, 120 F.3d 505, 507 (4th Cir. 1997) (stating that § 3565(a)(2) "plainly permits a district court to begin the sentencing process anew and to impose any sentence appropriate under the provisions of subchapter A")). Section 3565(a) directs the

district court "both to subchapter A generally and specifically to § 3553(a), which is found in that subchapter." *Id*. In turn, § 3553(a) provides that the district court "'shall consider' the applicable sentencing guidelines or policy statements." *Id*. (citing 18 U.S.C. § 3553(a)(4)(B)). "The sentencing commission has chosen to issue policy statements dealing with sentences that follow probation violations, *see* U.S.S.G. Ch. 7, but no guidelines, and we have held that these policy statements are merely advisory." *Id*. (citation omitted). Because the Commission has not promulgated any "guidelines addressing sentences following probation violations, we are of the view that when a defendant's probation is revoked a sentencing court should give attention to the policy statements found in chapter 7 of the sentencing guidelines and to the other considerations identified in § 3553(a), as applicable." *Id*. Then, the court should "sentence the defendant within the statutory limits for the original crime." *Id*.

As *Iversen* and *Tschebaum* make clear, the district court in the present case possessed the power to sentence Holdsworth, as a probation violator, within the range of sentences available at the time of his initial sentencing, although the court was not required to do so. *See Tschebaum*, 306 F.3d at 543 ("We believe, however, that neither *Iversen* nor § 3565(a) requires a court to sentence a defendant within the original sentencing range when his or her probation is revoked."). Additionally, in accordance with *Tschebaum*, the district court considered the § 3553(a) factors and correctly considered Holdsworth's advisory Guidelines range under the Chapter 7 policy statement, which was 8 to 14 months' imprisonment. *See* U.S.S.G. § 7B1.4(a) ("The range of imprisonment applicable upon revocation is set forth in the following table . . . Grade C . . . 8–14 [for Category VI]."). Finally, Holdsworth's resulting sentence of 51 months' imprisonment was within the statutory limit and therefore not "contrary to law." *See Tschebaum*, 306 F.3d at 544.

Accordingly, we hold that the district court did not plainly err by sentencing him within the Guidelines range applicable at his original sentencing, which was calculated using a criminal history category of VI.

## 2. Tapia *Error*

Holdsworth also argues that the district court committed *Tapia* error by lengthening his sentence to provide rehabilitation opportunities. He acknowledges that the district court did not reference any specific Bureau of Prisons treatment program, as the court did in *Tapia*. Nevertheless, he relies on the district court's comment that "two, three, four good years of sobriety and medication and stability" may be needed for the defendant's "safety and the safety of the community." He contends that this comment shows that the district court was "thinking out loud as she steadily ratcheted up the amount of time the defendant needed to get and stay sober." Although he admits that the "court also considered other factors such as public safety," he argues that "it is plain that the length of [his] sentence was determined in significant part by impermissible consideration of [his] need for rehabilitation."

In *Tapia*, the Supreme Court "held that, under 18 U.S.C. § 3582(a), district courts may not 'impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation.'" *United States v. Blackmon*, 662 F.3d 981, 986 (8th Cir. 2011) (footnote omitted) (quoting *Tapia*, 564 U.S. at 335). Nevertheless, district courts are permitted to "make recommendations to the Bureau of Prisons (BOP) regarding treatment programs and can discuss the benefits of such programs with defendants at sentencing." *Id*. (citing *Tapia*, 564 U.S. at 334). "Therefore, [a] district court commit[s] error that [is] plain . . . *if* . . . the district court lengthened [the defendant's] sentence to promote rehabilitation." *Id*. (citing *United States v. Pirani*, 406 F.3d 543, 549 (8th Cir. 2005) (en banc) ("The plain error principle applies even when . . . the error results from a change in the law that occurred while the case was pending on appeal.")). "Many potential *Tapia* errors will not require remand under plain error review." *United States v. Olson*, 667 F.3d 958, 962 (8th Cir. 2012) (citing *Blackmon*, 662 F.3d at 987–88).

We conclude that the district court's remarks at sentencing do not suggest that it lengthened Holdsworth's sentence to promote rehabilitation. Not only does Holdsworth concede that the district court never referenced any specific BOP treatment program, but he also concedes that the district court "discussed other factors such as the need for deterrence and protection of the public due to the defendant's criminal history." Moreover, it was Holdsworth—not the court—who "suggest[ed] to the [c]ourt that treatment is the response here," noted that "one of [the § 3553(a) factors" to consider "is the need for treatment"; and requested that the court "give him a chance to get back into treatment." *See United States v. Werlein*, 664 F.3d 1143, 1147 (8th Cir. 2011) ("While the district court mentioned therapeutic intervention and treatment at the sentencing hearing, these references were made in the context of explaining why [the defendant] posed a risk of recidivism, responding to a request by [the defendant's] attorney that he be placed in a facility with treatment, and mentioning that [the defendant] might benefit from professional assistance." (citation omitted)); *Blackmon*, 662 F.3d at 987 ("Indeed, the district court never expressed an intention to lengthen [the defendant's] sentence for rehabilitative purposes. Rather, it was [the defendant] who requested a downward variance based on his rehabilitative needs and the district court merely pointed out a mathematical flaw in his request.").

Neither the isolated comment that Holdsworth identifies nor the record as a whole indicates that the district court chose Holdsworth's particular sentence for the specific purpose of ensuring that he could participate in a drug-treatment program. *See, e.g.*, *United States v. Replogle*, 678 F.3d 940, 943 (8th Cir. 2012) (holding that district court's remarks did not suggest that it had improperly used imprisonment as means of fostering defendant's rehabilitation; rather, the remarks were a proper discussion of opportunities for rehabilitation within prison or benefits of specific treatment or training programs; the court said "one of the elements of sentencing . . . is to make sure you get the treatment and training and education necessary to help you to go forward," and that "perhaps" defendant's situation, his "total disconnect between reality and his inability to conduct himself in a manner that allows him to be

-10-

a part of society," could "be treated better somewhere else," but that the court lacked the tools to do so).

Accordingly, we hold that the district court did not commit plain error under *Tapia*.

B. *Substantive Reasonableness*

Holdsworth argues that his sentence is substantively unreasonable because the district court (1) gave significant weight to improper factors, such as Holdsworth's need for treatment; (2) believed that Holdsworth was an offender with a criminal history category VI instead of V; and (3) committed a clear error of judgment in deciding that a 51-month sentence was sufficient but not greater than necessary.

Holdsworth's 51-month sentence falls within the advisory Guidelines range calculated at Holdsworth's original sentencing and is presumptively reasonable; we hold that Holdsworth has failed to rebut that presumption. *See United States v. Harlan*, 815 F.3d 1100, 1107 (8th Cir. 2016). As explained *supra*, the district court did not erroneously calculate Holdsworth's Guidelines range or base Holdsworth's 51-month sentence on his need for treatment. Instead, it properly considered the § 3553(a) factors in imposing the sentence, as well as Holdsworth's argument that he should receive a lower sentence. "The fact the district court did not give [Holdsworth's purportedly mitigating factors] as much 'weight' as [Holdsworth] would have preferred does not justify reversal." *See United States v. Bridges*, 569 F.3d 374, 379 (8th Cir. 2009).

III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____