[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11545
Non-Argument Calendar
_____

D.C. Docket No. 3:07-cr-00033-VMC-TEM-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CREDICE FREEMAN,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 3, 2013)

Before TJOFLAT, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Credice Freeman appeals his sentence imposed upon revocation of his

supervised release, pursuant to 18 U.S.C. § 3583(e)(3).  Freeman argues that his

24-month sentence, ten months above the advisory guidelines range of 8 to 14 months, is substantively unreasonable because it was based on Freeman's need for rehabilitation. After review, we affirm Freeman's sentence.

## I.  GENERAL PRINCIPLES

We review a sentence imposed upon revocation for reasonableness. United States v. Sweeting, 437 F.3d 1105, 1106-07 (11th Cir. 2006). Our reasonableness review applies the deferential abuse of discretion standard. Gall v. United States, 552 U.S. 38, 41, 46, 128 S. Ct. 586, 591, 594 (2007). We first examine whether the district court committed any significant procedural error and then whether the sentence is substantively unreasonable in light of the totality of the circumstances and the 18 U.S.C. § 3553(a) factors. United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008).[1] The party challenging the sentence has the burden to show it is unreasonable. United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).

A district court may revoke a term of supervised release and impose a term of imprisonment after considering certain factors in § 3553(a) and the advisory ranges of imprisonment in Chapter 7 of the Sentencing Guidelines.[2] 18 U.S.C.

---

[1]On appeal, Freeman does not challenge the district court's revocation of his supervised release or raise any procedural error with respect to his revocation proceedings. Thus, these issues are abandoned. See United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) (explaining that a party abandons an issue on appeal by failing to raise it plainly and prominently).

[2]The relevant § 3553(a) factors the court must consider are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant: (2) the need to

§ 3583(e); United States v. Silva, 443 F.3d 795, 799 (11th Cir. 2006). A revocation sentence may be substantively unreasonable, however, if it is based upon impermissible factors. United States v. Velasquez Velasquez, 524 F.3d 1248, 1252 (11th Cir. 2008); see also Pugh, 515 F.3d at 1191-92.

## II.  REASONABLENESS OF FREEMAN'S SENTENCE

Citing Tapia v. United States, 564 U.S. ___, 131 S. Ct. 2382 (2011), Freeman argues that a district court is prohibited from considering his rehabilitation need in choosing his term of imprisonment. Prior to Tapia, this Court had concluded that a district court may consider a defendant's rehabilitative needs when imposing a sentence in a revocation proceeding. See United States v. Wiggins, 220 F.3d 1248, 1249 (11th Cir. 2000). In Tapia, the Supreme Court concluded that, in initial sentencing proceedings, the text of 18 U.S.C. § 3582(a) prevents a sentencing court from "impos[ing] or lengthen[ing] a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation." Tapia, 564 U.S. at ___, 131 S. Ct. at 2393.

This Court has not yet addressed whether Tapia applies to revocation proceedings and need not resolve the issue here. Even assuming arguendo that it is

---

afford adequate deterrence; (3) the need to protect the public; (4) the need to provide the defendant with educational or vocational training or medical care; (5) the Sentencing Guidelines range and pertinent policy statements of the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to victims. See 18 U.S.C. § 3583(e) (cross-referencing 18 U.S.C. § 3553(a)(1), (a)(2)(B) through (D), and (a)(4) through (7)).

impermissible to consider a defendant's rehabilitation need in choosing a revocation sentence, a review of the record as a whole convinces us that the district court did not do so in Freeman's case. Instead, the district court varied upward from the advisory guidelines range and imposed a 24-month sentence because while on supervised release Freeman cut off his ankle monitor and absconded.

In his argument Freeman focuses on several statements the district court made during the revocation hearing. In the first statement, the district court said, "I think that you need to go back to square one, Mr. Freeman, and you need to recognize that when you have a problem, you need to get help for that problem." In the second statement, the district court said, "I think, in some ways, you're better off in prison getting the help that you need without - - with boundaries clearly in place . . . ." Taken in isolation, these two statements appear to support Freeman's claim that the district court considered rehabilitation needs when it sentenced him. However, when these statements are understood in the context of the history of Freeman's supervision and the revocation hearing as a whole, they demonstrate that the district court did not, in fact, rely solely or even primarily on Freeman's need for any sort of rehabilitation when it sentenced him.

During the first six months of supervised release, Freeman failed two drug tests and did not attend required drug treatment counseling sessions. Freeman admitted that he was having difficulty adjusting back into the community and

agreed to stay in a residential reentry center ("the center") for 180 days. Once at the center, Freeman fainted and was taken to the emergency room. Doctors advised Freeman that he had a potentially life-threatening condition (the nature of which is not disclosed in the record) and needed follow-up treatment. Freeman continued to have medical problems, requiring the center's staff to call for transport to the emergency room multiple times. Yet, Freeman refused either to go to the hospital or to get the recommended follow-up treatment.

The center ultimately discharged Freeman due to his medical condition and his refusal to get medical treatment. As a result, Freeman agreed to again modify his supervised release, and the district court ordered him to serve the remaining 164 days in home detention. During home detention, Freeman could not leave his residence except for employment and was required to wear an electronic monitoring device. When his probation officer tried on four occasions to visit Freeman at his home, Freeman was not there. Based on these four unsuccessful visits and Freeman's failure to complete his community service requirements, the probation officer filed the petition for revocation of Freeman's supervised release.[3]

At the revocation hearing, Freeman admitted all of the supervised release violations. The government advised the district court that in December 2012,

---

[3]Specifically, Freeman was charged with four counts of failing to comply with the home detention program by leaving his residence without authorization and one count of failing to complete any of the 25 hours of the court-ordered community service.

Freeman "cut the ankle monitor and was gone and probation was unable to locate him." In March 2013, U.S. Marshals found Freeman hiding in his mother's attic and arrested him. The government asked for a 24-month sentence because Freeman's conduct "in absconding and hiding from the officers and the probation office" went beyond what the government typically saw "in someone who uses drugs or can't find a job" and then violates supervision. The district court stated that it agreed with the prosecutor that Freeman's conduct was not typical.

In response, Freeman explained that he "probably would have been better off" if he had remained at the center, but that he had refused treatment for his medical condition because he could not afford to pay for it. When he was discharged from the center and placed on home detention, "the financials [in his family's home were] bad," and he had to deal with them on his own, which threw him "into a loop." Freeman further argued that he had undiagnosed mental health issues and that "it's just tough to deal with those, especially with people with mental health issues that tend to try to self-medicate when they can't afford to go to a doctor or pay for the medication that they should be taking." The district court stated that, although it was sympathetic to somebody having mental health issues, it was Freeman's responsibility to make sure he got appropriate treatment and that his mental health issues might help explain Freeman's conduct, but did not excuse it.

In imposing a 24-month sentence, the district court stated that it had considered the § 3553(a) factors and the advisory guidelines range and the Sentencing Commission's policy statements.  The district court stressed the fact that when Freeman began having problems at home, Freeman cut off his ankle monitor, absconded, and hid from, rather than sought help from, his probation officer, as follows:

> In particular, Mr. Freeman, is the fact that you cut off the monitor; you absconded; you were hiding.  Those are just inexcusable. I think that you need to go back to square one, Mr. Freeman, and you need to recognize that when you have a problem, you need to get help for that problem.  You just absolutely have to do that.  And you need to stay away from situations that are going to cause you problems down the road.  If you think you need help, you call your probation officer.  I mean, I'm not going to put you on probation anymore, but I mean, that's what you should have done back then.  And there are community resources available to help somebody like you today.
>
> I'm sorry, I'm not going to change my mind.  I have made up my mind after listening to you and after listening to the prosecutor.
>
> I think, in some ways, you're better off in prison getting the help that you need without - - with boundaries clearly in place, and once you're released from prison, there's no more probation, and you'll be on your own there.  And I just urge you to not violate the law because you have a hefty criminal history, and another judge is going to take a look at this if you break the law again and you're going to go to prison for a long time, and you just don't want that happening to you.

After pronouncing the sentence imposed, the district court asked "what kind of programs should [Freeman] participate in?"  Both Freeman and the probation officer indicated that Freeman was interested in the barber program, and the district

7

court indicated that it would recommend that Freeman participate in that program. Thus, the district court's question referred to possible vocational training, not rehabilitation. The district court stated that it also would recommend that Freeman receive a mental health evaluation and treatment, but at no time did the district court suggest that this was the basis for sentencing Freeman above the advisory guidelines range.

From the forgoing detailed recitation of what transpired in the district court, it is apparent that it was not Freeman's "problems" (i.e., his financial and mental health issues), but Freeman's cutting his ankle monitor and absconding that motivated the district court to impose a sentence above the advisory guidelines range. To the extent the district court discussed Freeman's "problems," it was to emphasize that they did not excuse his extreme and unusual conduct warranting an upward variance. Although the district court recommended that Freeman receive mental health treatment while in prison, nothing the district court said suggests that it chose a longer sentence so that Freeman could get such treatment or any other rehabilitation while in prison.

Further, while the district court expressed a belief that Freeman might be better off in a structured environment such as prison, the district court's comment was made as part of a warning to Freeman that, once he finished his 24-month prison term, he would no longer have the support of the probation office, but he

8

would be on his own and would likely face a much longer sentence if he violated the law again.  When viewed as a whole, the district court's statements reflect that its reason for imposing a 24-month sentence was the circumstances of Freeman's violation of the conditions of his home detention, not Freeman's need for rehabilitation services.

Accordingly, Freeman has not carried his burden to show that his 24-month sentence is substantively unreasonable.

**AFFIRMED.**