[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14661
Non-Argument Calendar
_____

D.C. Docket No. 8:06-cr-00464-EAK-TGW-10

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHANCEY DEON COOPER,
a.k.a. Chauncy,
a.k.a. Black,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 24, 2019)

Before TJOFLAT, BRANCH and HULL, Circuit Judges.

PER CURIAM:

Chancey Deon Cooper appeals his 60-month sentence, a 23-month upward variance from his guidelines range, imposed upon revocation of his supervised release. The parties agree that the district court committed Tapia[1] error by considering Cooper's need for drug rehabilitation and vocational training in imposing Cooper's revocation sentence. After review, we agree with the parties that the district court erred under Tapia. Accordingly, we vacate Cooper's revocation sentence and remand for resentencing.

## I. BACKGROUND

### A. Underlying Conviction and Sentence

In May 2007, Cooper pled guilty to (1) conspiracy to possess with intent to distribute 50 grams or more of cocaine base ("crack"), in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii) & 846 (Count 1), and (2) using, carrying, and brandishing a firearm during and in relation to a federal drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) & 2 (Count 3). These charges arose from Cooper's participation in a large-scale crack cocaine conspiracy involving multiple other defendants.

In Cooper's presentence investigation report ("PSR"), the probation officer calculated a total offense level of 35 and a criminal history category of III, resulting in a guidelines range of 210 to 262 months' imprisonment on the

---

[1] Tapia v. United States, 564 U.S. 319, 131 S. Ct. 2382 (2011).

2

conspiracy charge in Count 1. Cooper's firearm offense in Count 3 carried a statutory mandatory consecutive sentence of 7 years (84 months') imprisonment.

At sentencing, the government moved for a downward departure based on Cooper's substantial assistance. The district court granted Cooper an eight-level downward departure, bringing his total offense level down to a 27 and his guidelines range on Count 1 to 87 to 108 months' imprisonment. The district court sentenced Cooper to a total term of 171 months' imprisonment, consisting of 87 months on the conspiracy charge in Count 1 and a mandatory consecutive term of 84 months on the firearm charge in Count 3, followed by concurrent terms of 60 months of supervised released on both counts.

Subsequently, Cooper's imprisonment sentence for the conspiracy charge in Count 1 was reduced to 56 months' imprisonment as a result of the retroactive application of Amendments 750 and 782 to the Sentencing Guidelines. This reduced his total sentence to 140 months.

## B.    January 2018 Supervised Release Violations

Cooper began serving his 60-month term of supervised release on January 13, 2017. In January 2018, Cooper's probation officer filed a report with the district court stating that Cooper had failed to comply with the terms of his supervised release by failing to maintain his employment and by testing positive for controlled substances. The probation officer recounted that, when confronted

with the positive drug tests, Cooper admitted to using drugs, expressed remorse, and took responsibility for his actions.  The probation officer issued Cooper a written reprimand and referred him to substance abuse treatment.  The probation officer requested that the court take no further action regarding Cooper's violations at that time.

**C.    March and April 2018 Petitions for Revocation**

In March 2018, the probation officer filed a petition to revoke Cooper's supervised release based on the following three alleged violations: (1) Cooper's attempt to deceive his probation officer by using a prosthetic penis and concealed bag of urine when asked to provide a urine sample, which constituted new criminal conduct of fraudulent practices under Florida Statute § 817.565; (2) Cooper's continuing failure, since November 2017, to maintain a lawful occupation without an acceptable excuse; and (3) Cooper's admitted use of marijuana.  In light of the probation officer's petition, the district court issued a warrant for Cooper's arrest.

On April 13, 2018, Cooper was arrested during a traffic stop pursuant to his outstanding warrant for violating his supervised release.  During the stop, officers observed several items consistent with the sale of narcotics in Cooper's car, including small plastic baggies, "cut" straws, and a small digital scale.  The officers also searched Cooper incident to his arrest and recovered a 2.8 gram bag of crack cocaine in Cooper's pants.  After transporting Cooper to the Sheriff's office,

4

officers noticed a tan powdery substance and ripped bag on the floorboard of the patrol vehicle. A second ripped bag of the tan substance was found in Cooper's boxer shorts. The tan substance tested positive for fentanyl, and the patrol vehicle had to be decontaminated.

Based on this new criminal conduct discovered during Cooper's arrest, on April 19, 2018, the probation officer filed a superseding petition for revocation of Cooper's supervised release. The superseding petition added the following four violations to the three previously alleged in the March 2018 petition: (4) new criminal conduct, possession of fentanyl with intent to sell; (5) new criminal conduct, possession of crack cocaine with intent to sell; (6) new criminal conduct, tampering with evidence (the fentanyl); and (7) new criminal conduct, possession of drug paraphernalia. The probation officer noted that each of these additional violations had resulted in state criminal charges.

In an accompanying memorandum, the probation officer noted that Cooper's actions in spreading the fentanyl around the back seat of the patrol vehicle "potentially placed the lives of the public and the Manatee County Sheriff's Office personnel in serious danger given the potential for overdose from incidental contact with fentanyl." The probation officer further advised that Cooper's statutory maximum revocation sentence was 5 years' imprisonment and that his

5

guidelines range, based on his original conviction being a Class A felony and his criminal history category of III, was 30 to 37 months.

The probation officer subsequently submitted a sentencing recommendation, which recommended that Cooper be sentenced to the statutory maximum of five years' imprisonment based on the severity of his violations. The probation officer noted, among other things, that Cooper's "adjustment to supervision ha[d] been marginal," that he had been "consistently deceptive with his probation officer," and that he was "not amenable to community-based supervision." In addition, the probation officer emphasized that Cooper's new criminal violations were serious, that his conduct in tampering with the fentanyl and spreading it over the backseat of the police vehicle "was extremely reckless given the potential for accidental overdose from incidental contact with fentanyl," and that the "Southern Manatee Fire & Rescue District incurred a financial loss of $1,662.18 as a result of their response to the [fentanyl] incident."

## D.    Revocation Hearing

The district court held a revocation hearing on October 25, 2018. At the hearing, Cooper pled guilty to the first, second, third, and fifth violations in the April 2018 superseding petition for revocation (attempting to falsify the urine sample, failing to maintain employment, using marijuana, and possessing crack cocaine with intent to sell). The government agreed to dismiss or withdraw the

remaining violations (possession of fentanyl with intent to sell, tampering with evidence, and possession of drug paraphernalia), but stated that it intended to use the conduct underlying those violations as aggravating factors for imposing the statutory maximum revocation sentence.

Cooper requested a sentence within the guidelines range of 30 to 37 months. Among other things, Cooper noted that the crack cocaine violation involved a small amount of crack cocaine; the fentanyl was not pure fentanyl, but rather heroin laced with fentanyl; he also had state charges pending on those drug offenses; and he had accepted responsibility. Cooper further explained that he suffered from post-traumatic stress disorder from his prior period of incarceration because he had been "treated as a snitch" for cooperating with law enforcement, was beaten on several occasions, and was sexually assaulted on one occasion. Cooper acknowledged that he needed substance abuse and psychological treatment and requested that the court impose a 30-month sentence with conditions that included drug and psychological treatment, as well as vocational training.

The probation officer reiterated his recommendation of a 60-month statutory maximum sentence based on the seriousness of Cooper's conduct. The government likewise requested a statutory maximum sentence. The government first stressed the seriousness of Cooper's underlying, original criminal conduct for which he was serving supervised release, noting that Cooper was deeply involved

in a large-scale crack cocaine conspiracy that involved various instances of violent conduct. The government also highlighted the fact that, after being incarcerated for that conduct, Cooper got out, went back to selling crack cocaine, and began selling fentanyl as well. The government further emphasized the dangerous nature of fentanyl and the recklessness of Cooper's conduct in exposing officers to the fentanyl by spreading it around in the patrol car. The government submitted that, despite receiving a substantial downward departure at his original sentencing, Cooper had "thumbed his nose at the system" and continued to engage in serious criminal conduct.

In response, Cooper reiterated that the drug amounts involved in his violations were "somewhat miniscule" and that his substantial assistance to the government in his underlying case should be considered. Cooper also noted that he was unable to complete the Bureau of Prisons' Residential Drug Abuse Program ("RDAP") during his prior incarceration because he was placed in protective custody due to threats being made against him. Cooper concluded by stressing that "three years is a long time" and would be "more than a sufficient sentence" given that he also faced additional time on his state charges.

Before pronouncing Cooper's sentence, the district court noted that the Jesup Federal Correctional Institution in Georgia, which Cooper's counsel had requested, "would be a very good choice" for Cooper "from a lot of standpoints," including

8

because it had the RDAP program and vocational training opportunities. The district court indicated that it was considering "what's going to be best for [Cooper]," stressing that Cooper needed to "get out of [Manatee County]" and "learn a trade." The court then stated: "I'm going to recommend Jesup, Georgia. And . . . I'm going to give you the 60 months. I want you to go away and I want you to take advantage of all of the benefits at Jesup, Georgia. It will take you that long to get through the RDAP program and all the vocational programs." The district court highlighted some of the vocational training opportunities available at Jesup and reiterated that Cooper had "to get [himself] educated and out of Florida" because "[t]hat's the only thing that's going to save you."

The district court then formally adjudicated Cooper guilty and sentenced him to 60 months' imprisonment. The court stated Cooper would "get all these recommendations" it had just made, "including the RDAP program for the 500-hour substance abuse." The district court stated: "The difference between 37 months and 60 may be the difference in you getting the vocational trades you need, including the plumbing and the computers related to the trade, and the Small Business Administration." The government then asked the court to clarify whether it "adopted the arguments of the government and probation's position," and the court stated that it had. The court additionally stated, "also, I'm concerned about what would happen to [Cooper] if [he went] back to Manatee County too soon."

9

Cooper objected that his 60-month sentence was procedurally and substantively unreasonable and violated Tapia. The district court noted Cooper's objection, but stated "[g]ive yourself the 60 months before you are 40 years of age and you may say the judge was right. You've got all these trades. You're making a new life and a fresh start." At the end of the hearing, the district court reiterated that "[t]his sentence may save [Cooper's] life," and cautioned that Cooper would be "in big trouble if [he went] back to Manatee County."

## II. DISCUSSION

On appeal, Cooper argues that the district court erred under Tapia, rendering his revocation sentence both procedurally and substantively unreasonable, because it considered rehabilitation in varying upward to impose the statutory maximum sentence. The government agrees that the district court committed Tapia error in this case, and that the error was not harmless. Both parties request that we vacate Cooper's sentence and remand for resentencing. As we explain below, we agree with the parties that the district court erred under Tapia and that the error was not harmless.

We review a sentence imposed upon the revocation of supervised release for reasonableness. United States v. Vandergrift, 754 F.3d 1303, 1307 (11th Cir. 2014). In reviewing the reasonableness of a sentence, we first ensure the district court committed no significant procedural error, and then, if no procedural error is

10

found, examine whether the sentence is substantively reasonable in light of the totality of the circumstances and the relevant 18 U.S.C. § 3553(a) factors. See Gall v. United States, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007); United States v. Trailer, 827 F.3d 933, 936 (11th Cir. 2016). If the district court errs at sentencing and the defendant properly preserved that error for appeal, this Court will vacate and remand for resentencing unless the government establishes that the error was harmless, meaning that it did not affect the district court's selection of the sentence or had only a very slight effect. See Williams v. United States, 503 U.S. 193, 203, 112 S. Ct. 1112, 1120-21 (1992); United States v. Campa, 529 F.3d 980, 1013 (11th Cir. 2008).

A district court commits procedural error by, among other things, considering an improper factor in imposing sentence. Vandergrift, 754 F.3d at 1308. In Tapia, the Supreme Court held that a sentencing court may not impose or lengthen a federal defendant's prison term in order to promote the defendant's rehabilitation. Tapia v. United States, 564 U.S. 319, 321, 131 S. Ct. 2382, 2385 (2011). In Tapia, the district court "referred several times to Tapia's need for drug treatment," specifically citing the RDAP program, commented that Tapia should serve a prison term long enough to complete that program, and explicitly stated that Tapia's need for drug treatment was "one of the factors" it considered in imposing sentence. Id. at 321-22, 131 S. Ct. at 2385.

11

The Supreme Court held that the district court's consideration of Tapia's need for rehabilitative services was impermissible.  See id. at 321, 334-35, 131 S. Ct. at 2385, 2392-93.  The Supreme Court determined that § 3582(a) of the Sentencing Reform Act, which in relevant part instructs sentencing courts to "'recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation,'" precludes sentencing courts from imposing or lengthening a defendant's prison term to promote rehabilitation.  See id. at 326-32, 131 S. Ct. at 2388-91 (quoting 18 U.S.C. § 3582(a)).  The Tapia Court was careful to explain, however, that "[a] court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs" at sentencing.  Id. at 334, 131 S. Ct. at 2392.  The problem in Tapia's case was that the district court's statements "suggest[ed] that the court may have calculated the length of Tapia's sentence to ensure that she receive[d] certain rehabilitative services," which the Court held is impermissible.  Id. at 334-35, 131 S. Ct. at 2392-93.

In Vandergrift, this Court held that Tapia applies in the context of a resentencing upon revocation of supervised release.  754 F.3d at 1309.  This Court in Vandergrift further explained that Tapia is not limited to situations where the district court (1) specifically tailors the length of the sentence to permit completion of a rehabilitation program, or (2) considers rehabilitation as the dominant factor in

12

its sentencing determination.  Id. at 1310.  Rather, this Court held that "Tapia error occurs where a district court considers rehabilitation when crafting a sentence of imprisonment."  Id.  This Court elaborated that, "[a]s with any other instance where a court considers an impermissible sentencing factor, considering rehabilitation is error," and "[t]his is true regardless of how dominant the error was in the court's analysis and regardless of whether we can tell with certainty that the court relied on rehabilitation because the sentence was tailored to a rehabilitation program."  Id. at 1311 (citation omitted).

Here, as in Tapia and Vandergrift, the district court procedurally erred by considering rehabilitation in imposing Cooper's sentence.  Tapia, 564 U.S. at 334-35, 131 S. Ct. at 2392-93; Vandergrift, 754 F.3d at 1311.  The district court did more than simply discuss the rehabilitation and training opportunities that would be available to Cooper in prison.  See Tapia, 564 U.S. at 334, 131 S. Ct. at 2392.  Rather, the district court repeatedly stressed Cooper's need to stop using drugs, learn a trade, and leave Manatee County behind to get a fresh start and indicated that the 60-month sentence it imposed would further those goals.  In particular, the district court noted, after stating that it would impose a 60-month sentence, that "[i]t will take you that long to get through the RDAP program and all the vocational programs."  And the court later reiterated that "[t]he difference between 37 months and 60 may be the difference in you getting the vocational trades you

13

need." These statements suggest that the district court may have calculated the length of Cooper's sentence to ensure he received certain rehabilitative services, in violation of Tapia. See Tapia, 564 U.S. at 334-35, 131 S. Ct. at 2393; Vandergrift, 754 F.3d at 1311 (concluding the district court's statements that it "consider[ed] what's best for the defendant as a factor" and that "vocational training for a period of time in the prison system . . . could also help save the defendant's life" violated Tapia).

Furthermore, the record does not indicate that the district court's Tapia error in this case was harmless. Indeed, the government concedes it was not. Although the district court, at the government's prompting, agreed that it had "adopted the arguments of the government and probation's position," the only factors the district court actually discussed in imposing Cooper's sentence were his needs for substance abuse treatment and vocational training. The district court did not indicate that, absent those rehabilitative considerations, it still would have varied upward to the statutory maximum sentence based on certain permissible factors. And given the district court's statements, recounted above, indicating that it sentenced Cooper to the statutory maximum specifically because of his need for rehabilitation, we cannot say on this record that the district court's Tapia error did not affect or had only a very slight effect on Cooper's sentence. See Williams, 503 U.S. at 203, 112 S. Ct. at 1120-21; Campa, 529 F.3d at 1013.

14

## IV. CONCLUSION

For the foregoing reasons, we conclude that the district court procedurally erred under Tapia in imposing Cooper's 60-month revocation sentence, and that error was not harmless.[2]  Accordingly, we vacate Cooper's sentence and remand for resentencing.

**VACATED AND REMANDED.**

---

[2]Having concluded that the district court committed procedural error in this case, we need not and do not address whether, as a separate matter, Cooper's 60-month sentence is substantively unreasonable.  See Gall, 552 U.S. at 51, 128 S. Ct. at 597 (indicating that courts should consider the substantive reasonableness of a sentence only after first determining that the sentence is procedurally sound).  Nothing in this opinion should be read to suggest that the district court, on remand, may not reimpose a 60-month sentence if it finds that such an upward variance is warranted by permissible factors.