NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0083n.06

No. 19-5133

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Feb 04, 2020<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| CHRISTOPHER VINES, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

**BEFORE:** SUTTON, BUSH, and READLER, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** With Christopher Vines's release from federal custody, the United States made every effort to help him beat his gripping drug addiction. Vines was placed on supervised release and enrolled in a drug-counseling program. Vines would soon test positive for marijuana and cocaine, but the government stuck with him. Vines was enrolled in various counseling programs; none worked. The district court imposed gradual terms of imprisonment for Vines's violations of his terms of supervised release, first six weekends, then eight months. But no matter the judicially crafted approach, Vines went astray. After yet another round of drug-related violations, the district court revoked Vines's supervised release and imposed a 24-month prison sentence. We **AFFIRM**.

## I. BACKGROUND

In 2012, Vines pled guilty to one count of being a felon in possession of a firearm. *See* 18 U.S.C. § 922(g)(1). The district court sentenced Vines to 60 months in prison followed by three

years of supervised release. In view of Vines's history of drug abuse and drug crimes, the district court recommended that Vines receive 500 hours of substance-abuse counseling from a drug-treatment program for inmates. Yet Vines's addiction proved intractable. Within weeks of his release from prison, Vines was back to his old ways. Those misdeeds are reflected by three post-release episodes.

1. The terms of Vines's supervised release prohibited him from possessing, using, or distributing any controlled substance and required him to participate in a substance-abuse testing and treatment program. Vines's probation officer enrolled Vines in a qualifying program. But Vines missed his first appointment. At his probation officer's direction, Vines rescheduled. And he made that appointment—only to then test positive for marijuana and cocaine.

This cycle repeated itself for the next six months. Vines would miss his counseling appointments, his probation officer would admonish him, and Vines would reschedule his appointments, where he, on multiple occasions, tested positive for drug use. So Vines's probation officer, with no objection from Vines, sought to modify the conditions of Vines's supervised release. The district court agreed and modified those terms to require Vines to serve six weekends in intermittent custody, with added drug-testing obligations.

2. Three months later, Vines was arrested for assaulting his girlfriend. That offense violated Vines's terms of supervised release, which prohibited him from committing another offense. Those terms also required Vines, if arrested, to notify his probation officer within 72 hours—another commitment Vines failed to honor. When Vines's probation officer ultimately contacted Vines about the offense, the officer discovered that Vines had moved to a new address. That too was a supervised-release violation—Vines was required to notify his probation officer if he moved to a new address. And a few days later, when Vines reported for his next drug-screening

2

appointment, he again tested positive for both cocaine and marijuana. Altogether, Vines committed four new supervised-release violations within about a week.

The district court held a hearing to revoke Vines's supervised release. Vines admitted to most of the violations, but not to committing domestic assault (and the government ultimately chose not to pursue the matter). Vines's admitted conduct yielded a Guidelines policy statement range of 6 to 12 months in prison. *See* U.S.S.G. § 7B1.4. The parties jointly recommended, and the district court agreed, that Vines receive an eight-month sentence of imprisonment followed by a two-year term of supervised release.

3. Following Vines's release from prison, his probation officer re-enrolled him in a drug counseling program. Yet within just a matter of weeks, Vines again violated the terms of his supervised release, missing three drug-counseling or therapy sessions. Those violations brought a more intensive treatment program for Vines and many more missed appointments. Over five months, Vines tested positive for drug use on seven different occasions. Eventually, an arrest warrant was issued for Vines. A marshal arrested Vines—only after Vines slammed a door in the marshal's face—and discovered cocaine in Vines's pocket.

At his revocation hearing, Vines admitted to each of the violations. His conduct constituted a grade C supervised-release violation, which, when combined with his criminal history (category IV), again corresponded with a Guidelines range of 6 to 12 months in prison. *See* U.S.S.G. § 7B1.4. Vines asked the court to impose a three-and-a-half-month sentence, with a term of supervised release. The government asked for a sentence at the low end of the Guidelines range.

The district court, however, had a more serious penalty in mind: a 24-month sentence, one that equaled the statutory maximum and doubled the top of the recommended sentencing range. Among the justifications cited by the district court were Vines's numerous supervised-release

3

violations, his two prior appearances for modification to and revocation of supervised release, his lack of cooperation with the probation office and the marshal, and the need to protect the public. The district court also recommended that the Bureau of Prisons enroll Vines in its 500-hour drug treatment program.

## II. ANALYSIS

Just as if reviewing a sentence imposed following a conviction, we review a sentence imposed after the revocation of supervised release for an abuse of discretion. *United States v. Polihonki*, 543 F.3d 318, 322 (6th Cir. 2008) (citation omitted). When (as here) that sentence exceeds the prescribed Guidelines range, we "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall v. United States*, 552 U.S. 38, 51 (2007).

### A. Vines's Sentence Is Procedurally Reasonable.

Our review for procedural reasonableness is deferential. A district court abuses its discretion in revoking supervised release only if it commits a "significant procedural error." *Id.* Such errors include improperly calculating the Guidelines range, failing to treat that range as advisory, omitting from its reasoning the sentencing factors in 18 U.S.C. § 3583(e) (a subset of the familiar § 3553(a) factors applicable in the supervised release setting), considering impermissible factors, selecting the sentence based upon clearly erroneous facts, or failing to explain why it chose the sentence. *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018); *see also United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that "[t]he statute governing supervised release, 18 U.S.C. § 3583(e), requires the district court to consider a subset of the § 3553(a) factors").

4

1.  As purported evidence of procedural error, Vines first contends that the district court failed to acknowledge or discuss the Guidelines range applicable to his violations. This, says Vines, resulted in the district court failing to provide sufficient justification for its upward variance. But Vines's claim runs headlong into heavy legal and factual realities. As a legal matter, the district court was not required to refer explicitly to the Guidelines range during revocation proceedings. *See Polihonki*, 543 F.3d at 324; *see also United States v. Johnson*, 403 F.3d 813, 816 (6th Cir. 2005) (stating that we do not require a "ritual incantation" of the Guidelines or the § 3583(e) factors to affirm a sentence). As with sentencing, we merely require that the district court explain its reasons for imposing a particular sentence with enough detail to afford reasonable appellate review. *Polihonki*, 543 F.3d at 323–24.

And as a factual matter, the recommended Guidelines range was a prominent consideration throughout Vines's revocation proceedings. Start with Vines's Dispositional Report, which described his misconduct, his supervised-release violations, and probation's sentencing recommendation. The Report also included a calculation of his Guidelines range, with the final tally resulting in a recommended range of 6 to 12 months in prison. At the start of the revocation hearing, the district court asked whether both parties had reviewed the report (they had), and whether either party had any objections (they did not). Both parties and the district court then referred to that range throughout the hearing. Vines sought a sentence below the Guidelines range, and the government recommended a sentence at its low end. And in issuing its sentence, the district court acknowledged these Guidelines-related proposals, stating that it was "going to disregard the recommendation of [Vines's] counsel and the recommendation of the government to impose a sentence within the [G]uidelines." At each turn of the sentencing process, then, the Guidelines range was top of mind for the court and parties.

2. But, says Vines, even if the district court considered the Guidelines range, it nevertheless failed to explain sufficiently the rationale for imposing its above-Guidelines sentence. To Vines's mind, the district court's errors were plentiful. It failed to consider the § 3583(e) factors, misstated particular facts, and failed to explain why it rejected Vines's request for a lower sentence.

True, the district court did not recite the § 3583(e) factors. But we do not require a "ritual incantation" of those factors. *Johnson*, 403 F.3d at 816. We simply require that the district court address the relevant factors in reaching its conclusion. *Id.*; *see United States v. Trejo-Martinez*, 481 F.3d 409, 413 (6th Cir. 2007), which the district court safely achieved in deciding to vary upward. The court began by acknowledging Vines's long history of drug exposure and abuse. His father was a drug dealer, his mother and sister both struggled with drug addiction, and drugs, Vines added, "played a major part in [his] life and arrest record." The district court credited Vines for "[identifying] the problem."

The district court then turned from Vines's personal history to his supervised-release history, weighing the number and nature of his violations. *See* 18 U.S.C. § 3553(a)(1). As the district court noted, there was "some type of noncompliance almost every single month, and for many months two or three times, either failure to report, missing appointments, positive drug tests, or something else." At the time of Vines's arrest for these violations, the district court added, Vines resisted, ran into his apartment, and forced the marshal to break into the apartment to retrieve him. The district court then emphasized the need to "protect the public" from Vines's actions. Vines counters that he never failed to report to his probation officer. That may be. But the district court did not specify to whom Vines failed to report. And it is uncontested that Vines failed to report to several required drug tests and counseling sessions.

Nor does the record support Vines's belief that the district court failed to consider his request for a three-and-a-half-month sentence and imposition of supervised release with continued addiction counseling. Keeping in mind that Vines had already been afforded numerous chances to comply with various drug-counseling programs and that the district court had "already revoked [Vines] in the past," the district court denied Vines's request. Vines had run out of chances; he was "unable, at this point in [his] life, to comply with the conditions of supervised release." All told, the district court adequately considered the suggested Guidelines range and sufficiently explained its rationale for instead choosing to impose a longer term of imprisonment.

**B. Vines's Sentence Is Substantively Reasonable.**

Vines also claims that his 24-month sentence is substantively unreasonable. That sentence, which doubled the top end of his Guidelines range, might fairly be described as "long." But it was not "too long" when measured by "the totality of the circumstances." *Gall*, 552 U.S. at 51; *Rayyan*, 885 F.3d at 442. Those circumstances, most conspicuously, included Vines's serial violations of his supervised-release terms. *See, e.g.*, *United States v. Kokoski*, 435 F. App'x 472, 477 (6th Cir. 2011) (relying, in part, on the defendant's repeat violations as a basis for imposing the statutory-maximum sentence); *United States v. Visage*, 530 F. App'x 411, 412 (6th Cir. 2013) (per curiam) (upholding an above-Guidelines sentence based on the defendant's repeat violations and need to protect the public). For an offender who commits multiple supervised-release violations, it is not an abuse of discretion to vary up to the applicable statutory maximum. *See, e.g.*, *United States v. Glass*, 749 F. App'x 434, 441–42 (6th Cir. 2018) (upholding a 24-month sentence, where the Guidelines range was 3 to 9 months); *United States v. Jackson*, 541 F. App'x 668, 670–71 (6th Cir. 2013) (24-month sentence, 15 to 21 months Guidelines range); *United States v. Wells*, 443 F.

7

App'x 997, 998–99 (6th Cir. 2011) (24-month sentence, 12 to 18 months Guidelines range); *Kokoski*, 435 F. App'x at 477 (34-month sentence, 8 to 14 months Guidelines range).

As part of its 24-month sentence, the district court also included a recommendation to the Bureau of Prisons that Vines participate in the system's 500-hour drug-abuse program. Vines suggests the district court likely imposed a lengthy sentence to allow Vines to complete that program while in prison. True, a district court may not lengthen a defendant's prison term for the sole purpose of promoting substance-abuse rehabilitation. *Tapia v. United States*, 564 U.S. 319, 334–35 (2011). But that is not what occurred here. When issuing Vines's sentence, the district court discussed Vines's repeated violations, his previous modification and revocation proceedings, and the need to protect the public. It also emphasized that Vines needed to comply with his conditions and get his life in order. "[F]or those reasons," the district court imposed the statutory-maximum sentence. It was not until after the court issued the sentence that it began to discuss drug-treatment programs with Vines, at which point the district court opined that the program "may be [Vines's] only shot at beating this addiction." But that sequencing is entirely consistent with *Tapia*. 564 U.S. at 334 (permitting a district court to discuss "opportunities for rehabilitation within prison or the benefits of specific treatment or training programs"). No abuse of discretion occurred.

## III. CONCLUSION

For these reasons, we **AFFIRM**.