**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 22-4291**

─────────────

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RICHARD DEWAYNE LEWIS,

Defendant - Appellant.

─────────────

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  Henry E. Hudson, Senior District Judge.  (3:03-cr-00309-HEH-1)

─────────────

Argued:  October 25, 2023                          Decided:  January 8, 2024

─────────────

Before WILKINSON, NIEMEYER, and BENJAMIN, Circuit Judges.

─────────────

Affirmed by published opinion.  Judge Niemeyer wrote the opinion, in which Judge Wilkinson and Judge Benjamin joined.

─────────────

**ARGUED:**    Joseph Stephen Camden, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Richmond, Virginia, for Appellant.  Jacqueline Romy Bechara, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.  **ON BRIEF:** Geremy C. Kamens, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant.  Jessica D. Aber, United States Attorney, Olivia L. Norman, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

NIEMEYER, Circuit Judge:

In December 2010, after serving roughly seven years in prison for his 2004 federal conviction for conspiracy to traffic in illegal drugs and unlawful firearm possession, Richard Lewis began serving two concurrent 5-year terms of supervised release. While on supervised release, he was arrested and convicted under state law on three counts of manufacturing or distributing illegal drugs and sentenced to 13 years' imprisonment for those offenses.

On the federal probation officer's petition, the district court revoked Lewis's supervised release for violating a condition of his release — that he not commit any new crimes — and sentenced him to 20 months' imprisonment, to be served consecutively to his state sentence. Explaining its sentence, the court addressed Lewis's particular factual circumstances, some of which favored him, and concluded that its revocation sentence "satisf[ied] all the factors set forth in [18 U.S.C. §] 3553(a), and provide[d] for just punishment, and reflect[ed] the extent of the breach of trust evidenced by [Lewis's] breaches of supervised release."

Lewis challenges his sentence, contending first that it was plainly unreasonable because the district court "expressly considered and based its sentence on the need to provide just punishment [for] and reflect the seriousness of the violation." And second, he contends that the district court imposed the sentence pursuant to Chapter 7 of the Sentencing Guidelines, which, he argues, is invalid because its provisions recommend imprisonment ranges based on "the seriousness of the violation (a forbidden factor) and justify imprisonment as a sanction for breach of the court's trust — also a consideration

2

omitted from" the supervised release revocation statute, 18 U.S.C. § 3583(e).  He claims that Chapter 7's "express reliance *on punishment* as the justification for its policy statement renders [its] provisions *ultra vires*."  (Emphasis added).

We conclude that the district court faithfully complied with Chapter 7 and that Chapter 7 faithfully implements the governing statutes and therefore is not ultra vires.  We also conclude that the district court's reference to prohibited factors did not render its sentence plainly unreasonable.  Accordingly, we affirm.

I

After the government alleged that Lewis had committed numerous offenses between 1996 and 2002, he pleaded guilty in 2004 to two counts charging him with conspiracy to distribute 50 grams or more of cocaine base and possession of a firearm in furtherance of a drug trafficking crime.  He was sentenced to a term of 211 months' imprisonment, which was later reduced to 90 months' imprisonment.  He was also sentenced to two 5-year terms of supervised release, to be served concurrently.

Lewis was released from prison in December 2010 and began serving his 5-year terms of supervised release.  In July 2014, while on supervised release, Lewis was arrested by state law enforcement officers and thereafter charged with drug trafficking in violation of state law.  In August 2015, he was convicted on three counts and sentenced to 20 years' imprisonment for each count, with 15 years suspended on the first two counts and 17 years suspended on the third.  Thereafter, in June 2016, the state court revoked Lewis's probation

and sentenced him to an additional 6 years' imprisonment. His current estimated release date from state custody is in June 2027.

Based on Lewis's state law violations and his repeated failures of drug tests during his term of supervised release, his federal probation officer filed a petition for revocation of Lewis's supervised release, which had been imposed as part of his 2004 federal sentence. The district court conducted a hearing on May 3, 2022, at which Lewis admitted that he had been convicted in state court for offenses committed while on federal supervised release. Based on that admission, the court found that Lewis had violated his supervised release conditions and revoked his supervised release.

With respect to sentencing, the court began by finding that Lewis's violation was classified as a "Grade A violation" under U.S.S.G. § 7B1.1. And after combining that with his criminal history category (Category IV) and the fact that his supervised release was part of a sentence for a Class A felony, the court found that the resulting advisory sentencing range was 37 to 46 months' imprisonment, to be served consecutively to his state sentence. The court also found that the statutory maximum term of imprisonment was 60 months' imprisonment, as fixed in 18 U.S.C. § 3583(e)(3). Finally, the court stated that it would take into account Lewis's medical condition — he is paraplegic — and his serious mental health issues stemming from the extreme trauma he experienced as a child. After announcing these preliminaries, the court heard from counsel for the parties as to the appropriate sentence.

The government requested that Lewis receive a sentence of 37 months' imprisonment, consecutive to his state sentence, which was at the bottom of his advisory

4

Guidelines range. It explained that "because of the severity of the breach of trust in this case," it would have "typically" requested either "a sentence at the high end of the revocation table range [*i.e.*, 46 months] . . . or even the statutory maximum [*i.e.*, 60 months]." "But given a number of other mitigating circumstances, including the personal characteristics of [Lewis] and the fact that he does have a considerable amount of [state] time to serve," it requested instead a sentence at the bottom of the advisory range.

Lewis requested a below-Guidelines sentence. His counsel argued that "this will actually be the third time [that] he's being punished for" his 2014 drug-distribution activity, given his state sentences both for the convictions themselves and his state probation violation. As to the circumstances of the violation of supervised release, counsel argued that Lewis had been motivated to return to selling drugs because of the extreme financial difficulty he faced as a disabled person who, as a convicted felon, was ineligible for certain government benefits. His counsel explained that, in addition to his paraplegia, Lewis had other medical problems that had required at least three hospitalizations while he was in state custody. He also emphasized that Lewis had had "excellent conduct" while in state custody, with no disciplinary violations since his 2014 arrest, and that he had been given a minimum-security-level classification. Finally, Lewis's counsel noted that Virginia had an excellent reentry program and urged the court to consider that as a reason for running his federal revocation sentence concurrent to his state sentence. Thus, he requested a sentence of 36 months to be imposed concurrently with his state sentence. And if the court were inclined to reject that, he suggested "36 months, but half concurrent and half consecutive" or "the equivalent" of that, *i.e.*, an 18-month consecutive sentence.

5

Lewis's counsel also made legal arguments, contending that there was a "problem . . . with Chapter 7 [of the Sentencing Guidelines] as a whole." He observed that "Chapter 7 grades the violations according to how serious they are" by tying a violation's grade "to what the statutory[] maximum in state court was, or what type of crime it was," and he argued that this framework violated 18 U.S.C. § 3583(e). He explained that § 3583(e) directs district courts sentencing a defendant following a violation of supervised release conditions to consider "all the [§] 3553(a) factors *except for* just punishment, the seriousness of the offense, and the need to promote respect for the law," *i.e.*, the retribution factor listed in 18 U.S.C. § 3553(a)(2)(A). (Emphasis added). And he noted that we have specifically directed district courts not to consider the § 3553(a)(2)(A) factor when imposing a revocation sentence. *See United States v. Crudup*, 461 F.3d 433, 439 (4th Cir. 2006). He concluded that because Chapter 7 ranks supervised release violations "by the seriousness of the offense," it violates the "text of [§] 3583" and therefore is not a valid implementation of the statute. In addition, he argued that the § 3553(a) factors that were made applicable by § 3583(e) "all . . . recommend both a sentence below the Guidelines and [a] concurrent sentence."

After receiving the arguments of counsel and hearing from Lewis directly, the district court sentenced him to 20 months' imprisonment, to be served consecutively to his state sentence. In doing so, the court stated that it had "reviewed all the factors set forth in . . . [§] 3553(a)" and explained that two "important factors" stood out. "Number one, [his] criminal record [was] horrendous," and "[n]umber two, [his] institutional record ha[d] been good." The court also noted that, "unfortunately," Lewis had "physical conditions that

[would] affect [him] for the balance of [his] life," and it explained that it was taking "all those [factors] into consideration." The court then concluded:

> I think that based upon that, that a sentence that is adequate, but not longer than necessary, to satisfy all the factors set forth in 3553(a), and provide for just punishment, and reflect the extent of the breach of trust evidenced by [Lewis's] breaches of supervised release, would be commitment to the U.S. Bureau of Prisons for a term of 20 months.

Continuing, the court stated that this consecutive 20-month sentence represented "a substantial break based upon [Lewis's] physical condition," and it further added that, in its view, "even if [Lewis's] Guidelines were improperly computed," "a nonguideline sentence of 20 months would be appropriate in this case based upon [his] physical condition and the circumstances presented . . . today."

From the district court's revocation order and sentence dated May 3, 2022, Lewis filed this appeal.

## II

Lewis's challenge to the district court's sentence is based on his arguments that (1) in its individualized explanation of his sentence and (2) by its reliance on Chapter 7 of the Sentencing Guidelines, the district court treated his revocation sentence as "punishment" for a new "offense," in violation of 18 U.S.C. § 3583(e), which prohibits courts, when imposing revocation sentences, from relying on the retributive factor in § 3553(a)(2)(A). Indeed, Lewis broadly argues that all of Chapter 7 is ultra vires and therefore void and that his sentence imposed under Chapter 7 was thus plainly unreasonable.

7

Because Lewis's argument is directed at both the district court's sentencing procedure and Chapter 7 itself, we address first his broader claim that Chapter 7, which the district court did indeed consider, is ultra vires and therefore void.

Lewis claims that Chapter 7 is permeated by the "punitive rationale" that § 3583(e) forbids courts from considering in the revocation context. Specifically, he argues that Chapter 7's "breach of trust" theory for revocation sentences — under which "the sentence imposed upon revocation [of supervised release] [is] intended to sanction the violator for failing to abide by the conditions of the court-ordered supervision," U.S.S.G. ch. 7, pt. A, n.3(b) — is conceptually indistinguishable from providing *just punishment for the defendant's new conduct*. Thus, he concludes that Chapter 7 advises courts to impose a *punishment* for a new *offense* and, in doing so, violates § 3583(e)'s prohibition against considering the § 3553(a)(2)(A) punishment factor. In addition, he explains that Chapter 7 creates "three grades of . . . supervised release violations" (Grades A, B, and C) that are based on the relative *seriousness of the violation* — also a consideration that, he maintains, is prohibited under § 3583(e) — and that Chapter 7 then uses the violation's grade, combined with the defendant's criminal history category, to determine the advisory sentencing range. *See* U.S.S.G. § 7B1.1(a); *id.* § 7B1.4.

To address Lewis's arguments, we first review the nature of federal sentencing, including the nature of supervised release and the concept of reimprisoning a defendant who has violated the conditions of supervised release, as well as how the statutory sentencing scheme is implemented in the Sentencing Guidelines.

8

Congress has provided that a person who has been found guilty of a federal offense "shall be sentenced . . . so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case." 18 U.S.C. § 3551(a). And subparagraphs (A) through (D) of § 3553(a)(2) summarize the four traditional purposes of sentencing: (1) retribution or punishment, (2) deterrence, (3) incapacitation, and (4) rehabilitation. *See Tapia v. United States*, 564 U.S. 319, 325 (2011). Section 3551 also specifies that every federal sentence must include a term of probation, a fine, or a term of imprisonment. 18 U.S.C. § 3551(b). Finally, Congress has provided that every sentence that includes a term of imprisonment may also include "a requirement that the defendant be placed on a term of supervised release after imprisonment." *Id.* § 3583(a). If the court imposes a term of supervised release, it is required to impose certain mandatory conditions and may also include discretionary conditions. *See id.* § 3583(d).

In authorizing supervised release as part of a sentence of imprisonment, Congress indicated that "the primary goal . . . is to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other purposes but still needs supervision and training programs after release." S. Rep. No. 98-225, at 124 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3307. Thus, supervised release is "a post-incarceration program intended 'to assist individuals in their transition to community life.'" *United States v. McLeod*, 972 F.3d 637, 641 (4th Cir. 2020) (quoting *United States v. Johnson*, 529 U.S. 53, 59 (2000)). In this manner, "[s]upervised release

9

fulfills rehabilitative ends, distinct from those served by incarceration." *Johnson*, 529 U.S. at 59.

Therefore, while punishment is a legitimate reason for imposing imprisonment, it is not an appropriate reason for imposing supervised release, which is intended for rehabilitation.

Supervised release essentially amounts to a *conditional* and *partial* release — imposed at the time of sentencing — which allows the defendant to return to society when he has completed his term of imprisonment, albeit subject to specified conditions and the close supervision of a federal probation officer. Thus, the defendant is, for the period of supervised release, given greater but not complete freedom. The conditions of such release may require that the defendant engage in training, become employed, attend programs, and pursue other transformative activities that will assist him after completion of his term of supervised release. And Congress has also identified many conditions that are mandatory on supervised release, including "that the defendant not commit another . . . crime during the term of supervision." 18 U.S.C. § 3583(d).

Because supervised release is *always* conditional, it follows that when a term of supervised release is imposed, the defendant's sentence for the offense of conviction remains open and not fully determined. Specifically, if the defendant violates a condition of his supervised release, the court is authorized to "revoke" the supervised release "and require [him] to serve *in prison* all or part of the term of supervised release authorized by statute." 18 U.S.C. § 3583(e)(3) (emphasis added). Thus, when a district court revokes supervised release and requires reimprisonment, it is transforming a portion of the original

10

sentence — the release portion — into imprisonment. The reimprisonment is therefore conceptionally not a *new* punishment for the conduct violating the condition of supervised release; rather, it is a sanction authorized as part of the original sentence for the original offense. *See Johnson v. United States*, 529 U.S. 694, 700 (2000) (recognizing that "postrevocation sanctions" are "part of the penalty for the initial offense"); *see also United States v. Haymond*, 139 S. Ct. 2369, 2380 (2019) (plurality opinion) ("The defendant receives a term of supervised release thanks to his initial offense, and whether that release is later revoked or sustained, it constitutes a part of the final sentence for his crime").

Consistent with these characteristics of sentencing, Congress has restricted the factors that may be considered for each particular component of the sentence. Thus, for example, a term of imprisonment may not be imposed or lengthened to "promot[e] correction and rehabilitation." 18 U.S.C. § 3582(a); *see also Tapia*, 564 U.S. at 321. Conversely, supervised release may neither be imposed nor revoked to punish the defendant for the offense. *See* 18 U.S.C. § 3583(c), (e). Congress accomplished this restriction indirectly by specifying that when deciding at the original sentencing hearing whether to include a term of supervised release and its length and conditions, *id.* § 3583(c), as well as when deciding at a revocation hearing whether to reimprison a defendant who has violated a condition of that supervised release, *id.* § 3583(e)(3), the court must consider certain of the § 3553(a) factors. But Congress omitted from the list of § 3553(a) factors to be considered when imposing or revoking a term of supervised release the factor of retribution or punishment in § 3553(a)(2)(A), stated as "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide

11

just punishment for the offense." And based on the negative pregnant of the omission of the § 3553(a)(2)(A) factor from § 3583(e), we have recognized that district courts are *prohibited* from considering the retribution factor when deciding whether to reimprison the defendant following his violation of a condition of his supervised release. *See Crudup*, 461 F.3d at 439 ("According to § 3583(e), in devising a revocation sentence the district court is not authorized to consider whether the revocation sentence" furthers the retributive purpose of sentencing); *see also Tapia*, 564 U.S. at 326 (similarly interpreting § 3583(c) as providing that "a court may *not* take account of retribution (the first purpose listed in § 3553(a)(2)) when imposing a term of supervised release").

Another consequence of this statutory structure is that there are certain factors that district courts must consider *both* when deciding whether to impose a term of imprisonment with supervised release at the original sentencing hearing *and* when deciding at a revocation hearing whether to reimprison a defendant who has violated a condition of supervised release. Thus, for example, the court in both contexts must consider the defendant's history and characteristics, the need to deter criminal conduct, and the need to protect the public. 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C); *see also id.* §§ 3551(a), 3582(a), 3583(e)(3). This overlap, however, does *not* suggest that in sanctioning a violation of a supervised release condition, the court should treat the violation as a *new offense* and the sanction as *punishment* for that offense. Indeed, reading the statute in this manner could raise constitutional problems. *See Johnson*, 529 U.S. at 700 (explaining that "construing revocation and reimprisonment as punishment for the violation of the conditions of supervised release" would raise "serious constitutional questions" but that

12

"[t]reating postrevocation sanctions as part of the penalty for the initial offense . . . avoids [those] difficulties").

To implement this statutory sentencing scheme, Congress directed the Sentencing Commission to promulgate and distribute "guidelines . . . for use . . . in determining the sentence to be imposed . . . including . . . a determination whether a sentence to a term of imprisonment should include a requirement that the defendant be placed on a term of supervised release after imprisonment, and, if so, the appropriate length of such a term." 28 U.S.C. § 994(a)(1)(C).  Congress also directed that the Commission promulgate and distribute "guidelines or general policy statements regarding the appropriate use of . . . the provisions for modification of the term or conditions of supervised release and revocation of supervised release set forth in section 3583(e) of title 18."  *Id.* § 994(a)(3).  The Commission did this in promulgating Chapter 7.

The Commission explained its approach to revocations and revocation sentencing in some detail.  In the introduction to Chapter 7, it explained that it had considered adopting an approach that would "sanction violators for the particular conduct triggering the revocation *as if that conduct were being sentenced as new federal criminal conduct*." U.S.S.G. ch. 7, pt. A, n.3(b) (emphasis added).  But wisely, it chose to reject that approach, stating that "[a]fter lengthy consideration," it had instead adopted an approach that treats the "defendant's failure to follow the court-imposed conditions of . . . supervised release as a 'breach of trust.'"  *Id.*  Thus, under Chapter 7, "the sentence imposed upon revocation [is] intended to sanction the violator for failing to abide by the conditions of the court-ordered supervision, *leaving the punishment for any new criminal conduct to the court*

13

*responsible for imposing the sentence for that offense*." *Id.* (emphasis added).  Consistent with this, the Commission established "three broad grades of violations," *id.*, which combine with the defendant's criminal history category to produce a recommended range of imprisonment, *see id.* § 7B1.4.  Through this structure, the recommended sanction correlates with the extent of the defendant's breach of trust, "taking into account, to a limited degree, the seriousness of the underlying violation." *Id.* ch. 7, pt. A, n.3(b).  But the Commission also admonished courts that the object of a revocation sentence should not be to impose "an appropriate punishment" for the conduct constituting the supervised release violation.  *Id.*; *see also, e.g.*, *United States v. Gonzalez-Ferretiz*, No. 18-cr-117, 2021 WL 4471591, at *5 (E.D. Va. Sept. 28, 2021) (observing that Chapter Seven's "'breach of trust' theory . . . punishes the violation qua violation but not qua underlying action that constitutes a violation").  And by refusing to recommend that the sanction for a supervised release violation be treated as punishment for new criminal conduct, the Commission also avoided the constitutional difficulties identified in *Johnson*.  *See* 529 U.S. at 700.

We turn now to Lewis's argument that Chapter 7 of the Sentencing Guidelines nonetheless authorizes punishment for an offense and therefore improperly considers the prohibited retribution factor of § 3553(a)(2)(A) and that it illegally bases its recommended sentences on the "seriousness" of the offense, which is also part of the prohibited retribution factor.  *See* 18 U.S.C. § 3553(a)(2)(A) (providing that a sentence needs "to reflect the *seriousness* of the offense . . . and to provide just *punishment* for the offense" (emphasis added)).

14

First, we observe that nowhere does Chapter 7 characterize the reimprisonment sanction as *punishment* for a new offense, as Lewis suggests. Indeed, it explicitly rejects that notion. Regardless, Lewis argues that the lack of punishment language in Chapter 7 is not controlling because the Chapter nonetheless functions in substance to impose *punishment* for an *offense* and therefore violates §§ 3583(e) and 3553(a)(2)(A). This argument, however, requires that we understand the term "offense" in § 3553(a)(2)(A) to include supervised release violations. But we conclude otherwise.

The word "offense" as used throughout § 3553(a) refers to the offense of conviction for which the defendant was originally sentenced, not the new conduct violating his supervised release conditions. Section 3551(a) provides that on conviction for a federal *offense*, the defendant must be sentenced so as to achieve the four purposes of sentencing as set forth in § 3553(a)(2). And the "offense" in § 3553(a)(2) is thus *the offense* for which the defendant has been convicted. Moreover, § 3553(a) is a general sentencing provision, and its meaning does not change when considered in the context of supervised release. Therefore, when § 3583(c) and (e) refer to § 3553(a) offense factors, the *offense* referred to in § 3553(a) is the original offense for which the defendant was sentenced, not the violation of a condition of supervised release, as Lewis would have it.

Also, Lewis's argument equating "the offense" in § 3553(a)(2)(A) with the defendant's supervised release violation is inconsistent with the fact that supervised release is part of the original sentence, as noted above. The Supreme Court expressly recognized in *Johnson* that when a defendant's term of supervised release is revoked and he is reimprisoned, such "postrevocation sanctions [become] part of the penalty for the *initial*

15

*offense.*"  529 U.S. at 700 (emphasis added); *see also Haymond*, 139 S. Ct. at 2379–80 (same).  That "postrevocation penalties [thus] relate to the original offense," *Johnson*, 529 U.S. at 701, further confirms that "the offense" in § 3553(a) must be read as referring exclusively to the offense of conviction, not the defendant's supervised release violation. *Cf. United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (recognizing that "when sentencing upon revocation of supervised release," § 3583(e) requires the district court to "consider, among the other applicable § 3553(a) factors, 'the nature and circumstances of the *offense*'" and that "[t]he 'offense' so referenced is the original offense of conviction").

This understanding becomes even clearer when § 3583(c) is considered.  That section requires district courts to consider the exact same subset of the § 3553(a) factors when *imposing* supervised release in the first place as it must when deciding whether to revoke it.  Section 3583(c) thus requires that a district court, when deciding whether to impose a term of supervised release at the original sentencing, not consider the need for the supervised-release portion of the sentence to provide punishment for the offense for which the defendant is being sentenced.  *See Tapia*, 564 U.S. at 326; *Concepcion v. United States*, 597 U.S. 481, 494 (2022).  And this same standard is applicable when the court is deciding how to address the defendant's violation of a condition of his supervised release. The provisions — § 3583(c) and § 3583(e) — function with the same textual standards. Consequently, when a district court revokes a defendant's term of supervised release and "require[s] [him] to serve in prison all or part of the term of supervised release," 18 U.S.C. § 3583(e)(3), the court is not imposing such reimprisonment to *punish* the defendant *for*

16

*the original criminal offense*; the punishment purpose of sentencing was already fully addressed with the original sentence of imprisonment.

This understanding of revocation sentences is also fully consistent with how Chapter 7 treats a violation of supervised release. As the introduction explains, when a defendant's violation of supervised release constitutes a new criminal offense, a conviction for that new offense will call for a separate sentence imposed in accordance with §§ 3551(a) and 3553(a) or applicable state law. The violation of the supervised release condition, however, is neither that new offense nor even the original offense for which supervised release was imposed. It is a violation of a condition imposed by the court at the original sentencing, nothing more. Thus, as Chapter 7 explains:

> While the nature of the conduct leading to the revocation [is] considered in measuring the extent of the breach of trust, imposition of an appropriate punishment for any new criminal conduct [is] not . . . the primary goal of a revocation sentence. Instead, the sentence imposed upon revocation [is] intended to sanction the violator for failing to abide by the conditions of the court-ordered supervision, leaving the punishment for any new criminal conduct to the court responsible for imposing the sentence for that offense.

U.S.S.G. ch. 7, pt. A, n.3(b). This becomes especially clear in those circumstances where the supervised release violation does *not* even involve a new criminal offense but only a technical violation of one of the conditions of the defendant's supervised release.

In his Chapter 7 challenge, Lewis also argues separately that by creating three grades of violations, Chapter 7 necessarily considers the "seriousness of the offense," in violation of § 3583(e)(3)'s omission of the retributive factor in § 3553(a)(2)(A). But this argument again relies on the false premise that "the offense" in § 3553(a) should be read as including the defendant's supervised release violation. In addition, the argument overlooks that

17

§ 3553(a)(2)(A) operates as an integrated whole so as to give effect to one of the four main purposes of sentencing generally — namely, *to provide retribution or punishment*. *See, e.g.*, *Tapia*, 564 U.S. at 325–26 (noting that "a court may *not* take account of retribution (the first purpose listed in § 3553(a)(2)) when imposing a term of supervised release"); *Concepcion*, 597 U.S. at 494 (explaining that "Congress has expressly precluded district courts from considering the need for retribution" when "determining whether to include a term of supervised release[] and the length of any such term"); *Rita v. United States*, 551 U.S. 338, 347–48 (2007).  Thus, we cannot agree with Lewis that the "seriousness" phrase in § 3553(a)(2)(A) can be isolated from the rest of that provision and read to restrict a district court from even considering the relative seriousness of the conduct underlying the defendant's supervised release violation.

Indeed, Lewis's argument that district courts are prohibited from considering the seriousness of the defendant's supervised release violation is inconsistent with the very discretion that § 3583(e) gives district courts when imposing revocation sentences.  In recommending sentencing ranges in Chapter 7, the Sentencing Commission is merely addressing this discretion and providing advice on how much of the supervised release term should be converted to reimprisonment.  This follows from the text of § 3583(e), which authorizes district courts to "require the defendant to serve in prison *all or part of the term* of supervised release authorized by statute for the offense that resulted in such term of supervised release."  18 U.S.C. § 3583(e)(3) (emphasis added).  Because the court must choose between "all" or "part" of the term to convert to imprisonment, the court is given authority to select from a range of sentences, implying authority to assess the

18

seriousness of the conduct underlying the supervised release violation. Chapter 7 properly provides advice on this. The statutory provision further directs, as relevant to the term of reimprisonment, that a court also consider factors such as "the *nature and circumstances* of the offense" for which the defendant was originally sentenced. *Id*. § 3553(a)(1) (emphasis added).

At bottom, we reject Lewis's argument that Chapter 7 of the Sentencing Guidelines "must be struck down" as inconsistent with § 3583(e)'s prohibition of using the § 3553(a)(2)(A) factor when revoking the defendant's term of supervised release and requiring him to return to prison. And accordingly, it follows that there is no merit to his argument that the district court's consideration and application of Chapter 7 rendered Lewis's revocation sentence plainly unreasonable. Indeed, the district court was required to consider Chapter 7. *See* 18 U.S.C. § 3583(e) (requiring consideration of § 3553(a)(4), which includes "in the case of a violation of . . . supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission"); *see also* 28 U.S.C. § 994(a)(1), (3).

III

Apart from his challenge of Chapter 7, Lewis also challenges the district court's explanation of his sentence as constituting an independent violation of § 3583(e). During the revocation sentencing, the district court, after hearing from counsel and Lewis himself, explained the reasons for its revocation sentence, stating that the two "most important factors" were Lewis's criminal history — which the court found "horrendous" — and his

19

institutional record — which the court found to be "good." Then, the court added a third factor, Lewis's physical condition, which the court recognized to be unfortunate and permanent. After these explanations, the court then concluded that, "based upon" those three considerations, a sentence of 20 months was

> adequate, but not longer than necessary, to satisfy all the factors set forth in 3553(a), and provide for just punishment, and reflect the extent of the breach of trust evidenced by your breaches of supervised release . . . . I'm giving you a substantial break based upon your physical condition, and what I understand to be your limited life expectancy.

The 20-month sentence imposed was a downward variance from the advisory Guidelines range of 37 to 46 months' imprisonment.

Lewis contends that the district court's sentence was plainly unreasonable because the court expressed the need (1) "to satisfy all the factors set forth in 3553(a)" and (2) to "provide just punishment, and reflect the extent of the breach of trust." He argues that the court erred in referring to *all* the § 3553(a) factors, instead of only the factors made applicable by § 3583(e). And he argues also that the court erred in expressing the need "to provide just punishment," which is the prohibited factor of § 3553(a)(2)(A).

To be sure, these references, especially the need to provide just punishment, are inconsistent with § 3583(e). But even these references are ambiguous when considered in their overall context. Surely, the reference to all § 3553(a) factors could be construed to be all those *that are applicable*, as § 3551(a) provides. And the reference to provide just punishment was coupled with the reference to "reflect the extent of the breach of trust."

But more importantly, these references were summarizations of the particulars on which the court made clear it was relying in selecting the sentence of imprisonment. The

20

court explained that it chose its sentence based on (1) Lewis's criminal history, which was horrendous, (2) his prison record, which was good, and (3) his physical disability, which was permanent. And these facts all directly relate to § 3553(a) factors that § 3583(e)(3) required the court to consider. Moreover, the court said that the third fact was the most determinative, explaining: "I'm giving you a substantial break based upon your physical condition, and what I understand to be your limited life expectancy."

Thus, the factors on which the court *actually made its decision* were fully authorized. Simply its references were too broad. In these circumstances, we conclude, as we did in *United States v. Webb*, 738 F.3d 638, 642 (4th Cir. 2013), that these references did not render the court's sentence plainly unreasonable. In *Webb*, we held that "mere reference to such [prohibited] considerations does not render a revocation sentence procedurally unreasonable when those factors are relevant to, and considered in conjunction with, the enumerated § 3553(a) factors." *Id.* The defendant there contended that his revocation sentence was plainly unreasonable because the district court mentioned the prohibited § 3553(a)(2)(A) factor when announcing his 32-month sentence. *Id.* at 641. We rejected that argument, however, explaining, just as other courts of appeals have recognized, that "the factor[] listed in § 3553(a)(2)(A) [is] intertwined with the factors courts are expressly authorized to consider under § 3583(e)." *Id.* And, "[g]iven that the § 3553(a)(2)(A) factor[] [is] closely related to the factors district courts are instructed to consider under § 3583(e)," we stated that we "fail[ed] to see how a district court's reference to the § 3553(a)(2)(A) sentencing considerations, without more, would automatically

21

render a revocation sentence unreasonable." *Id.* at 642.  Accordingly, we held that such references did not render the revocation sentence procedurally unreasonable.

The circumstances here are even less aggravated than those in *Webb*.  While the court made passing references to *all* § 3553(a) factors and referenced the need "to provide for just punishment," the record, considered in its entirety, demonstrates that the court selected the downward variant sentence of 20 months' imprisonment because it was balancing Lewis's "horrendous" criminal record against Lewis's good institutional record and his distressing physical condition.  It is clear that the district court did not base Lewis's revocation sentence "predominately on" the retributive factor — the standard adopted in *Webb*.  738 F.3d at 642.

We accordingly hold that the district court's brief references did not render Lewis's sentence procedurally unreasonable, let alone plainly so.

\*      \*      \*

For the reasons given, we affirm the district court's revocation sentence.

AFFIRMED